IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DIANNA STRINGHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| *vs.* | ) | Cause No. 1:22-cv-817-TWP-MG |
| | ) | |
| CARMEL CLAY SCHOOLS; BOARD | ) | |
| OF SCHOOL TRUSTEES OF | ) | |
| CARMEL CLAY SCHOOLS, | ) | |
| | ) | |
| Defendants. | ) | |

## ANSWER TO COMPLAINT FOR DAMAGES AND DEMAND FOR TRIAL BY JURY

Come now Defendants Carmel Clay Schools ("CCS") and Board of School Trustees of Carmel Clay Schools (the "Board"), stating as follows for their Answer to Plaintiff's Verified Complaint for Damages and Demand for Trial by Jury ("Complaint").

## I.    INTRODUCTION

1.      This is an action brought by DIANNA STRINGHAM ("Mrs. Stringham") against Defendants CARMEL CLAY SCHOOLS and BOARD OF SCHOOL TRUSTEES OF CARMEL CLAY SCHOOLS (collectively "Carmel"), between which parties there was an employment relationship. Carmel violated the equal protection and due process guarantees under the United States Constitution (42 U.S.C. § 1983) and Indiana Constitution when it discriminated against, retaliated against, and terminated Mrs. Stringham

**ANSWER:**    Defendants admit that there was an employment relationship between CCS and Plaintiff and that Plaintiff has made claims against Defendants, but Defendants deny that their actions toward Plaintiff have been unlawful. Defendants deny any remaining allegation in this paragraph.

## II.  JURISDICTION

2.      Jurisdiction of the Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1367.

**ANSWER**:    Defendants admit that jurisdiction is appropriate under 28 U.S.C. sections 1331, 1343, and 1367, but deny that Plaintiff is entitled to any relief. Defendants deny any remaining allegation in this paragraph.

3.      The equal protection and due process claims are authorized and instituted pursuant to 42 U.S.C. § 1983.

**ANSWER:**    Defendants admit that Plaintiff is attempting to raise claims under 42 U.S.C. section 1983, but deny that Plaintiff is entitled to any relief. Defendants deny any remaining allegation in this paragraph.

4.      The state law claims are authorized and instituted pursuant to 28 U.S.C. § 1367.

**ANSWER:**    Defendants admit that the Court's jurisdiction over Plaintiff's state law claims is appropriate under 28 U.S.C. section 1367, but deny that Plaintiff is entitled to any relief. Defendants deny any remaining allegation in this paragraph.

5.      Jurisdiction to grant injunctive and declaratory equitable relief as well as to award damages is invoked pursuant to 42 U.S.C. § 1983.

**ANSWER:**    Defendants admit that 42 U.S.C. section 1983 authorizes injunctive and declaratory relief, as well as damages, but deny that Plaintiff is entitled to any relief. Defendants deny any remaining allegation in this paragraph.

6.      The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Southern District of Indiana, Indianapolis Division.

**ANSWER:**   Defendants admit that venue is appropriate in the Southern District of Indiana, but deny that they committed unlawful employment practices or otherwise acted unlawfully toward Plaintiff. Defendants deny any remaining allegation in this paragraph.

### III.   VENUE

7.      Mrs. Stringham is a resident of Hamilton County in the State of Indiana, and is a citizen of the United States of America.

**ANSWER:**   Admitted.

8.      Carmel Clay Schools is a school corporation located in Carmel, Hamilton County, Indiana.

**ANSWER:**   Admitted.

9.      The Board of School Commissioners of Carmel Clay Schools is the governing body of Carmel Clay Schools located in Carmel, Hamilton County, Indiana.

**ANSWER:**   Admitted.

10.      The unlawful employment practices alleged herein arose in Hamilton County, Indiana. Hamilton County is located in the Southern District of Indiana.

**ANSWER:**   Defendants admit that the allegations in Plaintiff's Complaint occurred in the Southern District of Indiana, but deny they acted unlawfully toward Plaintiff. Defendants deny any remaining allegation in this paragraph.

11.      Thus, this cause of action is properly venued in the Southern District of Indiana under 28 U.S.C. § 1391(b), which allows for an action to be brought in the district where the defendant resides or in which the cause of action arose.

**ANSWER:**    Defendants admit that venue is appropriate in the Southern District of Indiana under 29 U.S.C. section 1391(b), but deny that they acted unlawfully toward Plaintiff. Defendants deny any remaining allegation in this paragraph.

## IV. PLAINTIFF

12.    Mrs. Stringham is a citizen of the United States, and is currently, as she was during all times relevant to this Complaint, a resident of Hamilton County in the State of Indiana.

**ANSWER:**    Admitted.

13.    Mrs. Stringham resides in Westfield, Indiana.

**ANSWER:**    Admitted.

## V.    DEFENDANT

14.    Defendant Carmel Clay Schools is a school corporation located in Carmel, Hamilton County, Indiana.

**ANSWER:**    Admitted.

15.    Defendant The Board of School Commissions of Carmel Clay Schools is the governing body of Carmel Clay Schools.

**ANSWER:**    Admitted.

16.    At all times relevant to this action, Carmel employed Mrs. Stringham.

**ANSWER:**    Defendants admit that CCS employed Plaintiff from approximately July 2014 to March 2022. Defendants deny any remaining allegation in this paragraph.

## VI.    STATEMENT OF FACTS

17.    Mrs. Stringham loyally served as a counselor for almost eight (8) years at Carmel from 2014 to the present, 2022.

**ANSWER:** Defendants admit that CCS employed Plaintiff as a counselor from approximately July 2014 to March 2022. Defendants deny any remaining allegation in this paragraph.

18. From 2014 to 2021, Ms. Stringham was always rated as Highly Effective or Effective on her evaluations.

**ANSWER:** Defendants admit that from for the 2014-2015 school year to the 2020-2021 school year, Plaintiff's overall rating on her annual performance evaluation was either highly effective or effective. Defendants deny any implication that this necessarily means Plaintiff was meeting all of CCS' legitimate employment expectations. Defendants deny any remaining allegation in this paragraph.

19. Mrs. Stringham is Hispanic.

**ANSWER:** Admitted.

20. She is the only non-Caucasian in the counseling department.

**ANSWER:** Denied. Defendants further state that since the 2018-2019 school year, CCS has employed at least one person other than Plaintiff who is non-Caucasian in the high school counseling department.

21. Mrs. Stringham is homosexual.

**ANSWER:** Admitted. Defendants further state that CCS currently employs Plaintiff's spouse as a teacher at Carmel High School, where she has worked since approximately August 2017.

22. On or about September 1, 2020, Mrs. Stringham filed a Report of Discrimination and/or Harassment against Rachel Cole, the Director of Counseling for Carmel High School.

**ANSWER:**   Defendants admit that that on September 1, 2020, Plaintiff filed an internal complaint against Rachel Cole, but deny that Cole discriminated against her, harassed her, or otherwise acted unlawfully toward her. Defendants deny any remaining allegation in this paragraph.

23.   Mrs. Stringham felt like Mrs. Cole was targeting her because she was homosexual and because she was Hispanic.

**ANSWER:**   Defendants admit that based on her filing of an internal complaint, Plaintiff felt that Rachel Cole has targeting Plaintiff because of Plaintiff's sexual orientation and ethnicity. Defendants deny that is the case. Defendants deny any remaining allegation in this paragraph.

24.   Ms. Cartwright told Mrs. Stringham that "things changed after [Ms. Cartwright] started dating women."

**ANSWER:**   Defendants admit that Plaintiff made this allegation as part of her internal complaint. Defendants deny that Abby Cartwright, Plaintiff's co-worker, made the statement that Plaintiff has attributed to her. Defendants deny any remaining allegation in this paragraph.

25.   She also told Mrs. Stringham that she felt like Mrs. Cole was targeting Ms. Cartwright because she was gay.

**ANSWER:**   Defendants admit that Plaintiff made this allegation as part of her internal complaint. Defendants deny that Cartwright made the statement that Plaintiff has attributed to her. Defendants deny any remaining allegation in this paragraph.

26.   Mrs. Cole also stated to Ms. Cartwright: "Can you believe Stringham is married to a woman? That is weird."

**ANSWER:**   Denied.

27.     When Ms. Cartwright spoke to Mrs. Stringham about Mrs. Cole and her concerns, she was terrified, and she did not want Mrs. Cole to know she was in the office talking to Mrs. Stringham.

**ANSWER:**    Denied.

28.     On September 10, 2020, Mrs. Stringham was placed on her first improvement plan.

**ANSWER:**    Admitted.

29.     This was the first improvement plan Mrs. Stringham had ever been placed on.

**ANSWER:**    Admitted.

30.     Mrs. Stringham did not believe she should be placed on an improvement plan.

**ANSWER:**    Defendants admit that based on her reaction to the improvement plan, it appeared that Plaintiff did not think such a plan was warranted. Defendants deny any remaining allegation in this paragraph.

31.     Mrs. Stringham did not agree with it because she had been highly effective every year.

**ANSWER:**    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore deny the same.

32.     For Mrs. Stringham's 2020-2021 evaluation, Mrs. Cole initially gave Mrs. Stringham a "Needs Improvement."

**ANSWER:**    Admitted.

33.     This was nonsensical as Mrs. Stringham had received "Highly Effective" in ten (10) of the evaluation categories, and "Effective" in four (4) of the evaluation categories.

**ANSWER:**     Defendants admit that Plaintiff received the "Highly Effective" and "Effective" ratings in certain categories based on an extended observation conducted September 29, 2020, and a short observation conducted on April 22, 2021. Defendants deny that it was "nonsensical" to give Plaintiff an overall rating of "Needs Improvement" in part because the extended observation and short observation do not capture all aspects of Plaintiff's performance for the 2020-2021 school year and Plaintiff's evaluation included observations that there were areas where she needed to improve. In fact, those observations include the following:

> While the evidence of your work this school year would indicate needs improvement on the finalization, we are using our professional judgment this year to round up your score to effective. In doing so, please know we still have concerns about your performance and you will continue to be on an improvement plan for the 2020-2021 school year.

Defendants deny any remaining allegation in this paragraph.

34.     Mrs. Stringham received no "Improvement Necessary" or "Ineffective" on her 2020-2021 evaluation.

**ANSWER:**     Denied.

35.     Dr. Thomas Oestreich, the Assistant Superintendent of Carmel, directed Mrs. Cole to change it from "Needs Improvement" to "Effective" as there was no evidence to support a "Needs Improvement."

**ANSWER:**     Defendants admit that Dr. Oestreich directed Cole to change Plaintiff's overall rating from "Needs Improvement" to "Effective" for the 2020-2021 school year, but deny that it was because there was no evidence to support a "Needs Improvement" overall rating. Defendants deny any remaining allegation in this paragraph.

36.     Mrs. Stringham was placed on a second improvement plan in July of 2021.

**ANSWER:**     Admitted.

37.     On September 5, 2021, Mrs. Stringham received twenty-four (24) artifacts.

**ANSWER:**     Denied.

38.     On September 22, 2021, Mrs. Stringham received two (2) artifacts.

**ANSWER:**     Admitted.

39.     On September 29, 2021, Mrs. Stringham received three (3) artifacts.

**ANSWER:**     Admitted.

40.     On October 10, 2021, Mrs. Stringham received two (2) artifacts.

**ANSWER:**     Admitted.

41.     Thus, in four (4) days, Mrs. Stringham received thirty-one (31) artifacts.

**ANSWER:**     Denied.

42.     Artifacts are used and/or considered with a teacher's evaluation.

**ANSWER:**     Defendants admit that consideration with a teacher's evaluation is one of the reasons CCS uses artifacts. Defendants deny any remaining allegation in this paragraph.

43.     The artifacts are also used for performance purposes.

**ANSWER:**     Defendants admit that performance purposes is one of the reasons CCS uses artifacts. Defendants deny any remaining allegation in this paragraph.

44.     Prior to Mrs. Stringham receiving artifacts/write-ups in 2021 and 2022, she had never received any artifacts and/or write-ups.

**ANSWER:**     Admitted.

45.     After receiving these thirty-one (31) artifacts, Mrs. Stringham went on medical leave on October 11, 2021.

**ANSWER:**     Defendants admit that on or about October 11, 2021, Plaintiff sought and received FMLA leave. Defendants deny any remaining allegations in this paragraph.

46.     Mrs. Stringham went on medical leave because she was suicidal, stressed, anxious, and depressed because of Mrs. Cole's treatment of her.

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and therefore deny the same.

47.     Mrs. Stringham filed a second Report of Discrimination and/or Harassment against Mrs. Cole on January 3, 2022.

**ANSWER:**     Admitted.

48.     Mrs. Stringham never received a decision relating to her second complaint of discrimination.

**ANSWER:**     Admitted.

49.     Mrs. Stringham returned to work after her medical leave on January 11, 2022.

**ANSWER:**     Admitted.

50.     When Mrs. Stringham returned to school, she was placed on another improvement plan.

**ANSWER:**     Defendants admit that Plaintiff's existing improvement plan resumed when she returned from leave. Defendants deny any remaining allegation in this paragraph.

51.     Again, Mrs. Stringham did not believe that she should be placed on a third improvement plan.

**ANSWER:**     Defendants admit that based on her reaction to the improvement plan, it appeared that Plaintiff did not think such a plan was warranted. Defendants deny any remaining allegation in this paragraph.

52.     No other counselors at Carmel High School had ever been placed on an improvement plan.

**ANSWER:**    Defendants admit that no other counselor at the high school has been placed on an improvement plan during Rachel Cole's tenure as director. Defendants deny any remaining allegation in this paragraph.

53.    On January 23, 2022, Mrs. Stringham received twenty-nine (29) artifacts.

**ANSWER:**    Admitted.

54.    Thus, in a total of five (5) days, Ms. Stringham received sixty (60) total artifacts.

**ANSWER:**    Denied.

55.    The most artifacts any other counselor ever had was two (2) or three (3) artifacts.

**ANSWER:**    Defendants admit that other counselors at the high school had received approximately two or three artifacts during Rachel Cole's tenure as director. Defendants deny any remaining allegation in this paragraph.

56.    No counselor had ever received sixty (60) or more artifacts.

**ANSWER:**    Defendants admit that no other counselor at the high school received sixty or more artifacts during Rachel Cole's tenure as director. Defendants deny any remaining allegation in this paragraph.

57.    Indeed, Dr. Oestreich testified that no employee at Carmel had ever received sixty (60) or more artifacts in a matter of thirty-five (35) days.

**ANSWER:**    Defendants admit that at the board cancellation hearing, Dr. Oestreich testified to the effect that during his tenure at CCS, he was not aware of any employee other than Plaintiff who received sixty-five artifacts in a thirty-five day period. Defendants deny any remaining allegation in this paragraph.

58.    Although other counselors had made errors, Mrs. Cole did not submit artifacts for these counselors when an error was made.

**ANSWER:**   Denied.

59.   Other counselors had also had issues with their audits, but these counselors were not placed on an improvement plan.

**ANSWER:**   Defendants admit that other counselors had issues with their audits and that no counselor at the high school other than Plaintiff was on an improvement plan during Rachel Cole's tenure as director, but deny the implication that the other counselors' audit issues were as severe as Plaintiff's or that audit issues were the sole basis for Plaintiff's improvement plan. Defendants deny any remaining allegation in this paragraph.

60.   Mrs. Stringham is the only counselor to whom Mrs. Cole has provided negative feedback.

**ANSWER:**   Defendants admit that at the board cancellation hearing, Rachel Cole testified to the effect that she considered a termination recommendation to be negative feedback and that Plaintiff is the only counselor at the high school who Cole has recommended for termination. Defendants deny any remaining allegation in this paragraph.

61.   As part of Mrs. Stringham's licensing to become a Mental Health Counselor, she needed Mrs. Cole to sign a form or provide verification of Mrs. Stringham's employment as a counselor on Carmel letterhead.

**ANSWER:**   Defendants admit that Plaintiff asked Cole to sign two forms that required Cole to certify information specified on the forms, including that Plaintiff completed a "practicum" that was "conducted by a either a program faculty member or a supervisor working under the supervision or a program faculty member . . . ." Defendants deny that the forms pertained to a verification of employment. Defendants deny any remaining allegation in this paragraph.

62.     Mrs. Cole refused to sign it.

**ANSWER:**     Defendants admit that Cole refused to sign the two forms that Plaintiff presented because she could not accurately certify the information specified on the forms. Defendants deny any remaining allegation in this paragraph.

63.     After Mrs. Cole initially refused to sign the forms, Mrs. Stringham went to Mrs. Cole's office to explain what needed to be done for the forms.

**ANSWER:**     Defendants admit that Plaintiff met with Cole at Cole's office to discuss the forms. Defendants further admit that Plaintiff's explanation about the type of certification that she needed differed from the information specified on the forms. Defendants deny any remaining allegation in this paragraph.

64.     Mrs. Stringham explained that the State of Indiana merely needed verification that Mrs. Stringham had been a professional school counselor for the past 7 ½ years at Carmel High School.

**ANSWER:**     Defendants admit that Plaintiff's explanation about the type of certification that she needed differed from the information specified on the forms. Defendants deny any remaining allegation in this paragraph.

65.     Mrs. Cole still refused to sign the form.

**ANSWER:**     Defendants admit that Cole refused to sign the two forms that Plaintiff presented because she could not accurately certify the information specified on the forms. Defendants deny any remaining allegation in this paragraph.

66.     Mrs. Stringham asked her to call the State so that they could explain to Mrs. Cole what was needed.

**ANSWER:**    Defendants admit that when Plaintiff confronted Cole about Cole's refusal to sign the forms, Plaintiff urged Cole to contact a representative with the state. Defendants further admit that Cole instead told Plaintiff to bring her concerns about the forms to Dr. Oestreich as she had been directed, but that Plaintiff refused and continued to yell at Cole until a co-worker intervened.

67.    Again, Mrs. Cole refused.

**ANSWER:**    Defendants admit that Cole refused to sign the two forms that Plaintiff presented because she could not accurately certify the information specified on the forms and, by this time, Plaintiff had been directed to bring her concerns about the forms to Dr. Oestreich. Defendants deny any remaining allegation in this paragraph.

68.    Mrs. Stringham asked her to put the needed information on Carmel letterhead, but Mrs. Cole refused.

**ANSWER:**    Defendants admit that to the extent the "needed information" was consistent with the information to be certified on the forms, Cole could not provide such certification on letterhead because she could not do so accurately. Defendants deny any remaining allegation in this paragraph.

69.    Mrs. Stringham stated that Mrs. Cole's tone was aggressive.

**ANSWER:**    Defendants admit that Plaintiff thinks Cole acted aggressively during their meeting, but deny that is the case. Defendants deny any remaining allegation in this paragraph.

70.    Mrs. Stringham never leaned over the desk as Mrs. Cole claimed.

**ANSWER:**    Denied.

71.    Mrs. Stringham believes that others heard the conversation because the walls are thin.

14

**ANSWER:**    Defendants admit that co-workers overheard Plaintiff's conversation with Cole, including one co-worker who heard Plaintiff yelling at Cole and intervened in an effort to defuse the situation. Defendants deny any remaining allegation in this paragraph.

72.    Mrs. Stringham stated that the walls were so thin, others could hear people sneeze while they were in different office.

**ANSWER:**    Defendants admit that at the board cancellation hearing, Plaintiff testified to the effect that she believed that walls in her office and the surrounding offices were thin and therefore co-workers could hear each other more easily. Defendants deny any remaining allegation in this paragraph.

73.    Indeed, the walls in the Carmel High School Counseling Department are so thin that each counselor was issued a white noise machine to drown out any noise.

**ANSWER:**    Defendants admit that at the board cancellation hearing, Plaintiff testified to the effect that counselors used white noise machines in their offices. Defendants deny any remaining allegation in this paragraph.

74.    On January 31, 2022, Mrs. Stringham was placed on paid administrative leave.

**ANSWER:**    Admitted.

75.    No reasons for this paid administrative leave were given in writing.

**ANSWER:**    Denied.

76.    On February 4, 2022, Mrs. Stringham received a *Notice of Preliminary Decision & Statement of Your Conference and Conference/Hearing Rights*.

**ANSWER:**    Defendants admit that in a letter dated February 4, 2022, Carmel High School Principal Thomas Harmas notified Plaintiff of his preliminary decision to cancel

Plaintiff's regular teacher's contract. Defendants lack knowledge or information sufficient to form a belief about whether Plaintiff received the letter on that date, and therefore deny the same.

77.     The *Notice* listed only two (2) reasons for the proposed cancellation of Mrs. Stringham's teaching contract:

- Your unprofessional behavior directed towards your supervisor on January 28, 2022 where you were yelling loudly at her about a form you demanded she sign, when the assistant superintendent already communicated with you that any questions should be directed to him about the topic.
- You [sic] continued job performance that falls below what we expect out of our counselors at Carmel High School. You continue to make errors in your role as a counselor that impacts other staff and students.

**ANSWER:**     Defendants admit that the quoted parts of the letter are the reasons for Dr. Harmas' preliminary decision. Defendants further admit that Dr. Harmas also observed that "[t]hese reasons constitute[] insubordination, incompetence, neglect of duty and other good and just cause within the meaning of Indiana Code section 20-28-7.5-1(b)(6)." Defendants deny any remaining allegation in this paragraph.

78.     Although the letter was purportedly signed by Dr. Thomas Harmas, the Carmel High School Principal, Dr. Harmas was not present to confirm that he signed and issued the *Notice*.

**ANSWER:**     Defendants admit that Dr. Harmas did not attend the board cancellation hearing because he was on medical leave. Defendants deny the implication that Harmas did not sign the preliminary determination letter and further state that at the hearing, CCS' Superintendent, Dr. Michael Beresford, testified to the effect that he recognized Dr. Harmas' signature on the letter. Defendants deny any remaining allegation in this paragraph.

79.     For the alleged incident on January 28, 2022, Carmel never reminded Mrs. Stringham to "remain civil and be respectful and courteous to others" contrary to Carmel's own *Civility and Decorum* policy.

**ANSWER:**     Defendants deny the implication that progressive discipline was required under the policy and, even if it was, Defendants further deny that CCS departed from progressive discipline when dealing with Plaintiff's many performance deficiencies. Defendants deny any remaining allegation in this paragraph.

80.     Carmel also never attempted to progressively discipline Mrs. Stringham for the alleged incident on January 28, 2022.

**ANSWER:**     Denied.

81.     Again, this was contrary to Carmel's own *Civility and Decorum* policy

**ANSWER:**     Denied.

82.     On February 8, 2022, Mrs. Stringham timely requested a conference with the Superintendent.

**ANSWER:**     Admitted.

83.     On February 24, 2022, a private conference between Mrs. Stringham and Dr. Beresford was held.

**ANSWER:**     Admitted.

84.     On February 28, 2022, Mrs. Stringham timely requested a private conference with the Board.

**ANSWER:**     Admitted.

85.     On March 1, 2022, Dr. Beresford affirmed the *Notice of Preliminary Decision & Statement of Your Conference and Conference/Hearing Rights*.

**ANSWER:**     Defendants admit that in a letter to the board dated March 1, 2022, Dr. Beresford wrote, "based on my review and Mrs. Stringham's presentation at the Superintendent's conference, it is the Superintendent's recommendation to the Board of Trustees that the Board should cancel Mrs. Stringham's regular teacher's contract." Defendants deny any remaining allegation in this paragraph.

86.     On March 15, 2022, a private conference was held with the Board.

**ANSWER:**     Admitted.

87.     On March 28, 2022, the Board issued its *Findings of Fact, Conclusions of Law and Decision*. A copy of the *Findings of Fact, Conclusions of Law and Decision* is attached as "Exhibit 1."

**ANSWER:**     Admitted.

## STATEMENT OF CLAIMS

### COUNT I

*(Carmel's Decision to Terminate Mrs. Stringham was Arbitrary and Capricious in Violation of the 14th Amendment to the U.S. Constitution)*

88.     Mrs. Stringham incorporates the allegations of paragraphs 1 through 87 above and, in addition, states that Carmel's decision to terminate her teaching contract was arbitrary and capricious in violation of the Fourteenth Amendments to the U.S. Constitution, actionable under 42 U.S.C. § 1983.

**ANSWER:**     Defendants incorporate their answers to paragraphs 1 to 87 above. Defendants deny any remaining allegation in this paragraph.

89.     Mrs. Stringham suffered the deprivation of her rights, liberties and immunities as secured and guaranteed under the Constitution and Laws of the United States of America and the State of Indiana.

**ANSWER:**    Denied.

90.    The arbitrary and capricious decision to terminate Mrs. Stringham's teaching contract was in direct violation of Mrs. Stringham's constitutional rights and guarantees as secured by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and the Right to Due Course of Law under Article I, Section 12 of the Indiana Constitution.

**ANSWER:**    Denied.

91.    The decision to terminate Mrs. Stringham's teaching contract was so arbitrary and so capricious as to violate Mrs. Stringham's constitutional right to substantive due process as secured by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

**ANSWER:**    Denied.

92.    Furthermore, Mrs. Stringham was treated differently than other non-homosexual Carmel employees, violating Mrs. Stringham's right to Equal Protection under the Fourteenth Amendment to the United States Constitution and Article I, Section 23 of the Indiana Constitution.

**ANSWER:**    Denied.

93.    At all times relevant herein, Carmel was acting under the color of state law. Mrs. Stringham has suffered and will continue to suffer damages because of Carmel's unconstitutional actions.

**ANSWER:**    Defendants admit that they were acting under color of state law when CCS recommended cancelation of Plaintiff's regular teacher's contract and when the Board unanimously voted to do so. Defendants deny any remaining allegation in this paragraph.

## COUNT II
*(Petition for Review Pursuant to Ind. Code § 4-21.5-5-14)*

94.     Mrs. Stringham incorporates the allegations of paragraphs 1 through 93 above and, in addition, states that Carmel's decision to terminate Mrs. Stringham's teaching contract at Carmel was arbitrary, capricious, an abuse of discretion; contrary to constitutional right, power, privilege, or immunity; and unsupported by substantial evidence.

**ANSWER:**     Defendants incorporate their answers to paragraphs 1 to 93 above. Defendants deny any remaining allegation in this paragraph.

95.     Pursuant to Ind. Code §4-21.5-5-14, "the court shall grant relief . . . if it determines that a person seeking judicial relief has been prejudiced by an agency action that is: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity…or (5) unsupported by substantial evidence."

**ANSWER:**     Defendants admit that this paragraph accurately quotes part of Indiana Code section 4-21.5-5-14. Defendants deny any remaining allegation in this paragraph.

96.     The issues for determination by Carmel were whether Mrs. Stringham committed "insubordination," "incompetence," "neglect of duty" and "other good and just cause" with her alleged unprofessional behavior directed towards her supervisor on January 28, 2022 and/or with her job performance that allegedly fell below what was expected of Carmel High School counselors.

**ANSWER:**     Defendants admit that the issues for determination by the Board are stated in the board's findings and conclusions. Defendants deny any remaining allegation in this paragraph.

97.     Carmel had to prove by a preponderance of the evidence that Mrs. Stringham committed "insubordination," "incompetence," "neglect of duty" and "other good and just cause."

**ANSWER:**     Defendants admit that cancellation of Plaintiff's regular teacher's contract required CCS to prove, by a preponderance of the evidence, "insubordination," "incompetence," "neglect of duty," or "other good and just cause," as those terms are defined by statute. Defendants deny any remaining allegation in this paragraph.

98.     Carmel had to prove by a preponderance of the evidence that Mrs. Stringham engaged in unprofessional behavior directed towards her supervisor on January 28, 2022 and/or that her job performance fell below what was expected of Carmel High School counselors.

**ANSWER:**     Admitted.

99.     Carmel has failed to meet its burden of proof regarding its claim of "insubordination" pursuant to Ind. Code § 20-28-7.5-1(e)(2) by failing to present evidence that Mrs. Stringham willfully refused to obey state school laws or reasonable rules adopted by the Carmel. The evidence presented does not meet the legal standard required under Ind. Code § 20-28-7.5-1-(e)(2) because Mrs. Stringham did not "willfully" violate such a law, rule or policy.

**ANSWER:**     Denied.

100.     Indeed, Carmel failed to provide any evidence whatsoever that Mrs. Stringham willfully refused to obey state school laws or reasonable rules adopted by Carmel. No state school law or reasonable rule were presented to Carmel.

**ANSWER:**     Denied.

101.     Carmel failed to meet its burden of proof regarding its claim of "incompetence" pursuant to Ind. Code § 20-28-7.5-1(e)(3) by failing to present evidence that Mrs. Stringham

"receiv[ed] an ineffective designation on two (2) consecutive performance evaluations or an ineffective designation or improvement necessary rating under IC 20-28-11.5 for three (3) years of any five (5) year period."

**ANSWER:**    Denied. Defendants further state that the part of the statue that Plaintiff quotes is not the only way to prove imcompetence.

102.    Indeed, Mrs. Stringham never received **any** ineffective and/or improvement necessary designations during her entire tenure at Carmel High School. In Mrs. Stringham's entire tenure at Carmel High School, she only received "Highly Effective" or "Effective" designations:

- 2014-2015: Effective;

- 2015-2016: Highly Effective;

- 2016-2017: Highly Effective;

- 2017-2018: Highly Effective;

- 2018-2019: Highly Effective;

- 2019-2020: Highly Effective; and

- 2020-2021: Effective.

**ANSWER:**    Defendants admit that Plaintiff's overall ratings for each school year listed are accurately stated. Defendants deny any remaining allegation in this paragraph.

103.    Carmel failed to meet its burden of proof regarding its claim of "neglect of duty" pursuant to Ind. Code § 20-28-7.5-1(e)(5) by failing to present evidence that Mrs. Stringham engaged in unprofessional behavior directed towards her supervisor on January 28, 2022 and/or that her job performance fell below what was expected of Carmel High School counselors. The evidence presented does not meet the legal standard required under Ind. Code § 20-28-7.5-

1(e)(5) because Mrs. Stringham did not engage in unprofessional behavior nor did her job performance fall below what was expected of Carmel High School counselors.

> **ANSWER:** Denied.

104.    Indeed, Mrs. Stringham always received Highly Effective or Effective evaluations. Mrs. Cole only placed Mrs. Stringham on multiple improvement plans in retaliation for Mrs. Stringham filing two (2) complaints against Mrs. Cole alleging discrimination on the basis of sexual orientation and race and/or national origin. These multiple improvement plans and sixty (60) artifacts only came **after** Mrs. Stringham filed her complaints of discrimination and retaliation.

> **ANSWER:**    Defendants admit that one of Plaintiff's improvement plans began approximately several weeks after she made her first internal complaint against Cole, but deny the implication that CCS placed Plaintiff on the plan because of her internal complaint. Defendants further state that several months before she made her first internal complaint, CCS notified her that she would be under the improvement plan. Defendants deny any remaining allegation in this paragraph.

105.    The administration has failed to meet its burden of proof regarding its claim of "other good and just cause" pursuant to Ind. Code § 20-28-7.5-1(e)(7) by failing to present evidence that Mrs. Stringham engaged in unprofessional behavior directed towards her supervisor on January 28, 2022 and/or that her job performance fell below what was expected of Carmel High School counselors.  The evidence presented did not meet the legal standard required under Ind. Code § 20-28-7.5-1(e)(7) because Mrs. Stringham did not engage in unprofessional behavior nor did her job performance fall below what was expected of Carmel High School counselors.

**ANSWER:**   Denied.

106.   Indeed, Mrs. Stringham always received Highly Effective or Effective evaluations. Mrs. Cole only placed Mrs. Stringham on multiple improvement plans in retaliation for Mrs. Stringham filing two (2) complaints against Mrs. Cole alleging discrimination on the basis of sexual orientation and race and/or national origin. These multiple improvement plans and sixty (60) artifacts only came **after** Mrs. Stringham filed her complaints of discrimination and retaliation.

**ANSWER:**   Defendants admit that one of Plaintiff's improvement plans came after she made an internal complaint against Cole, but deny the implication that CCS placed Plaintiff on the plan because of her internal complaint. Defendants deny any remaining allegation in this paragraph.

107.   Carmel failed to present evidence that Mrs. Stringham's alleged conduct constituted "insubordination," "incompetence," "neglect of duty" and/or "other good and just cause" amounting to a terminable offense.

**ANSWER:**   Denied.

108.   Mrs. Stringham always received Highly Effective or Effective evaluations. Mrs. Cole only placed Mrs. Stringham on multiple improvement plans in retaliation for Mrs. Stringham filing two (2) complaints against Mrs. Cole alleging discrimination on the basis of sexual orientation and race and/or national origin. These multiple improvement plans and sixty (60) artifacts only came **after** Mrs. Stringham filed her complaints of discrimination and retaliation.

**ANSWER:**   Defendants admit that one of Plaintiff's improvement plans came after she made an internal complaint against Cole, but deny the implication that CCS placed Plaintiff on

the plan because of her internal complaint. Defendants deny any remaining allegation in this paragraph.

109.    By violating federal law – namely by Carmel and Mrs. Cole discriminating against and retaliating against Mrs. Stringham – Mrs. Stringham's contract should not have been terminated.

**ANSWER:**    Denied.

110.    Based the arbitrary and capricious decision by Carmel and based on this lack of evidence, the Board's termination of Mrs. Stringham's teaching contract should be reversed.

**ANSWER:**    Denied.

## PRAYER FOR RELIEF

Defendants deny that Plaintiff is entitled to any relief.

## RESERVATION OF RIGHTS

Defendants reserve the right to object to any claims or relief that Plaintiff later seeks by way of amending her Complaint or otherwise.

## JURY TRIAL

Defendants object to any claim or issue that is not triable by jury under applicable law.

### Affirmative Defenses

Defendants assert the following additional defenses:

1.    Any action the School took regarding Plaintiff was taken in good faith and for legitimate, non-discriminatory, and non-retaliatory reasons.

2.    Plaintiff is not entitled to attorney fees or other relief requested.

3.    Plaintiff has failed to mitigate damages.

4. To the extent any of Plaintiff's claims are untimely under the applicable statute of limitations, such claims are barred.

5. To the extent Plaintiff has failed to exhaust administrative remedies for any claims, such claims are barred.

6. Plaintiff's damages are subject to offset based on subsequent income received.

7. Plaintiff's damages are limited or foreclosed by the doctrine of after-acquired evidence.

8. The School reserves the right to amend this Answer and to assert additional defenses that may arise in the course of the investigation and discovery and further incorporates all defenses available under Fed. R. Civ. P. 8(c) as if fully set forth herein.

WHEREFORE, the Defendants Carmel Clay Schools and Board of School Trustees of Carmel Clay Schools, by counsel, respectfully request Plaintiff take nothing by way of the Complaint, for the costs of this action, and for any and all other just and proper relief in the premises.

<div style="margin-left: 40%;">

Respectfully,

/s/ Brent R. Borg_____
Brent R. Borg, Indiana Atty. No. 27415-29
Jessica Williams Schnelker, Atty. No. 31566-49
Church Church Hittle + Antrim
10765 Lantern Road, Suite 201
Fishers, IN 46038
bborg@cchalaw.com
Tel: 317-773-2190
Fax: 317-572-1609

Attorney for Carmel Clay Schools and
Board of School Trustees of Carmel Clay Schools

</div>

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of June, 2022, a true and exact copy of the foregoing was filed electronically via the Court's Electronic filing system. Notice of this filing was sent to the following by operation of the Court's Electronic filing system:

>Sandra L. Blevins, Esquire
>Jamie A. Maddox, Esquire
>Chad H. Holler, Esquire
>BETZ + BLEVINS
>One Indiana Square, Suite 1660
>Indianapolis, N 46204
>litigation@betzadvocates.com

>*/s/ Brent R. Borg*_____
>Brent R. Borg, Indiana Atty. No: 27415-29