**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| DIANNA STRINGHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:22-cv-00817-TWP-MG |
| | ) | |
| CARMEL CLAY SCHOOLS, | ) | |
| BOARD OF SCHOOL TRUSTEES OF CARMEL | ) | |
| CLAY SCHOOLS, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND**
**PLAINTIFF'S MOTION FOR LEAVE TO FILE SURREPLY**

This matter is before the Court on a Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by Defendants Carmel Clay Schools ("Carmel Clay") and the Board of School Trustees of Carmel Clay Schools ("Trustees") (collectively, "Defendants") (Filing No. 54). Following termination of her employment as a counselor at Carmel High School, Plaintiff Dianna Stringham ("Stringham") initiated this action asserting claims of employment discrimination and retaliation based on her sex, race, and national origin, and a deprivation of her equal protection and due process rights.  Also pending is Plaintiff's Motion for Leave to File a Surreply (Filing No. 75). For the reasons explained below, leave to file a surreply is **denied**, and summary judgment is **granted in part and denied in part**.

**I.     BACKGROUND**

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to Stringham as the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009).

A.      **Stringham's Employment Through the 2019-2020 School Year**

Stringham, identifies as a Hispanic female, and she is married to a woman (Filing No. 62-26 at 32, 35). She began working as a student counselor at Carmel High School in July 2014[1] (Filing No. 29 at 6). Within the first or second week of her employment, a co-worker instructed Stringham to not tell people she was gay because that "could be trouble for [her]" (Filing No. 62-26 at 31).

Each school year from 2014–2015 to 2018–2019, Stringham received an "Effective" or "Highly Effective" rating on her end-of-year evaluations. (Filing No. 62-42 at 23; Filing No. 62-43 at 24; Filing No. 62-44 at 20; Filing No. 62-45 at 22; Filing No. 62-46 at 13.) She had a course load of about 360 students and was responsible for the students counseling services, their academics, courses, and graduation plan, as well as helping them to attain school achievement and academic success (Filing No. 62-26 at 6). Stringham was great speaking with students and had a good working relationship when building rapport with the students (Filing No. 62-27 at 9).

In December 2016, Rachel Cole ("Cole") became the director of counseling and Stringham's supervisor (Filing No. 62-26 at 5). Cole and Stringham discussed personal matters, including that Stringham was married to another female employed by Carmel Clay (Filing No. 62-26 at 33). At some point, Cole spoke with Sara Jo Knoop ("Knoop"), a school social worker at Carmel High School, concerning people's use of pronouns to identify themselves (Filing No. 62-29 at 8-9; Filing No. 65 at 5.) "[T]rying to receive education," Cole asked Knoop to help explain it to her, and Cole shared that she did not use pronouns to identify herself (Filing No. 62-29 at 9).

At another point, Abby Cartwright ("Cartwright"), a freshman social worker, discussed with Stringham that Cole discriminated against her for dating women, and Cartwright eventually

---

[1] School counselors are teachers under Indiana law. *See* Ind. Code § 20-18-2-22. *See also* Filing No. 62-49.

complained to Human Resources concerning Cole's alleged mistreatment (Filing No. 66 at 2, 4; Filing No. 62-26 at 26-27).

In April 2020, Assistant Principal Karen McDaniel ("McDaniel") and Cole witnessed a "steady decline in [] Stringham's ability to provide effective and timely counseling services" and met with her to discuss their concerns (Filing No. 54-3 at 2). In Stringham's end-of-year evaluation for the 2019-2020 school year, Cole noted she had certain concerns (Filing No. 62-47 at 11–12). Toward the end of the narrative, Cole wrote: "I want you to know I am concerned about your performance as a counselor." *Id.* Stringham submitted a rebuttal to the evaluation, *id.* at 13, and she received a "Highly Effective" rating for the school year. *Id.* at 11.

At the end of the school year, an incident arose involving one of Stringham's students who received a diploma prior to graduating (Filing No. 62-26 at 21; Filing No. 54-5 at 3). Amidst the COVID-19 pandemic, McDaniel provided conflicting information to the counselors about the State of Indiana's decision on graduation for the 2019–2020 school year (Filing No. 62-26 at 17, 19). The ultimate decision against graduating the student — "because he had more than two courses to complete" — was not communicated to Stringham, *id.* at 22–23, and the student's parent alerted McDaniel after the student received a diploma by mail (Filing No. 54-5 at 3).

**B.**    **The 2020–2021 School Year: Stringham's First Internal Complaint of Discrimination and the Pair of Improvement Plans**

Starting in roughly June or July 2020, Maureen Borto ("Borto"), who assumed an assistant principal role in the 2020–2021 school year, began drafting an improvement plan for Stringham[2] (Filing No. 54-1 at 16, 26). She eventually worked on the plan with Carmel High School Principal

---

[2] Deposition testimony by Dr. Tom Harmas indicates Borto was the assistant principal involved in the performance improvement plan area when McDaniel became associate principal (Filing No. 62-31 at 6-7).

Dr. Tom Harmas ("Harmas"), McDaniel, and Cole, and received guidance from Dr. Tom Oestreich ("Oestreich"), Carmel Clay's assistant superintendent. *Id*. at 50–51, 146.

On or about September 1, 2020, Stringham filed a Report of Discrimination and/or Harassment on a form provided by Carmel Clay, naming Cole as the person who discriminated against her and complaining of an incident that started in March 2020 and extended to the present (Filing No. 62-10 at 5; Filing No. 62-26 at 26). Stringham reported that Cole was targeting her "[b]ecause [she] was a homosexual Hispanic woman." (Filing No. 54-1 at 82.) In explaining the events that had occurred, Stringham attached an eight-page document that detailed various interactions she had with Cole starting in August 2014, as well as other interactions she had with school administrators, co-workers, parents, and students. (Filing No. 62-10 at 6-13).

Oestreich met with Stringham and interviewed every person discussed in her September 1, 2020 Report of Discrimination and/or Harassment (Filing No. 62-33 at 10). Cole denied the allegations (Filing No. 62-33 at 21). Oestreich eventually detailed his findings in an October 16, 2020 report and determined no violations of the non-discrimination and anti-harassment board policy occurred and that continuous errors in Stringham's job performance resulted in additional follow-up by Cole that Stringham viewed as harassment and discrimination (Filing No. 62-11 at 4–5).

On September 10, 2020, Borto and Cole met with Stringham to review a performance improvement plan (Filing No. 54-1 at 26-27). The improvement plan document (the "First Improvement Plan") noted that Stringham had been informed at the previous year-end conference held on May 19, 2020, about "improvement needed in [her] position as a [Carmel High School] Counselor." (Filing No. 54-7 at 5.) Stringham was warned "there must be immediate and sustained improvement" as her position was "in jeopardy." *Id*. Stringham signed the First Improvement

Plan "because [she] received [it]", *id.*, but she did not agree with "all that [was] written" *id.*, since she had "been highly effective every single year" (Filing No. 54-1 at 87).

The 2020–2021 school year came and went. Borto noted that Stringham's performance did not improve. *Id.* at 29. With two months left in the school year, Borto met with Stringham to talk about her seniors, discuss those who were failing courses they needed to graduate, and identify immediate interventions. *Id.* at 33. At that meeting, Stringham brought up the names of four students. *Id.* at 34. At the end of the school year, Stringham emailed the names of five additional students who were not going to graduate on time — none of whom were on her previous list. *See id.* at 35.

Cole initially assigned Stringham a rating of "needs improvement" in her 2020–2021 evaluation, about which Stringham raised concerns with Oestreich (Filing No. 62-33 at 30). Oestreich reviewed the evaluation and spoke with Cole, and the rating was moved from "needs improvement" to "effective". *Id.* at 30–31; *see also* Filing No. 62-14 at 16. In Oestreich's opinion, despite Cole's verbal sharing of concerns with Stringham about "lots of errors" in her work, there was "not . . . enough written documentation for a needs improvement" rating. (Filing No. 62-33 at 30-31.)

In July 2021, a Formal Plan of Assistance ("Second Improvement Plan") was established between Cole, Borto, and Stringham to address specific performance expectations not being met, including managing routines and procedures, maintaining and submitting records in a timely fashion, communicating with families, and showing professionalism (Filing No. 62-17). The Second Improvement Plan also identified three students, two of whom did not graduate from Carmel High School (*see* Filing No. 62-24).

**C.**     **The First Half of the 2021-2022 School Year: Feedback on the Second Improvement Plan, and Stringham's Second Report of Discrimination**

Heading into the 2021-2022 school year, Stringham received feedback on her Second Improvement Plan.  Like with other employees, "artifacts" concerning Stringham were uploaded into the school's evaluation system (Filing No. 54-1 at 41–43).  The artifacts, which are documentation evidence of job performance, could be email communications, or a student's transcript or schedule, *id*. at 42, and "go toward a teacher's evaluation" as evidence of how the staff member was seen to perform in a certain aspect of their job. *Id*. at 52.  In the context of Stringham's artifacts, Borto indicated that she, Cole, and Stringham discussed the "concerns [Borto and Cole] had had" and then "those concerns . . . were documented as artifacts" and "tagged . . . based on [a] rubric".  *Id*. at 42.  On September 5, 2021, Cole sent Stringham twenty-four artifacts, complete with written narrative comments for each and corresponding evaluations spanning the four specific performance expectations outlined in the Second Improvement Plan (Filing No. 62-21 at 1-30; *see also* Filing No. 54-1 at 43-44).  Cole additionally sent two artifacts on September 22, 2021, three artifacts on September 29, 2021, and two artifacts on October 10, 2021 (Filing No. 62-21 at 31-37).  Each provided a rating of "Improvement Necessary" or "Ineffective".

During the fall semester 2021, Cole and Borto met with Stringham to provide feedback on the areas mentioned in the Second Improvement Plan (Filing No. 54-12; Filing No. 54-13; Filing No. 54-14).  During or after the fourth meeting on October 11, 2021, they relayed to Stringham that the Second Improvement Plan would continue (Filing No. 54-1 at 75).  After that, Stringham took a period of medical leave.  *Id*.

On January 3, 2022, Stringham filed a second Report of Discrimination and/or Harassment, naming Cole again for an incident spanning from April 2021 until October 11, 2021 (Filing No. 62-12 at 1).  Stringham wrote that she was "being targeted, harassed, [and] micromanaged after

being put on an improvement plan" and that "[t]he intolerance and retaliation" was extreme. *Id.* at 1–2. Carmel High School never issued a decision concerning Stringham's second complaint of discrimination (Filing No. 54-1 at 90), despite an investigation of the witnesses, including Cole, who was named in the complaint (Filing No. 62-20 at 1). Stringham additionally filed a Charge of Discrimination with the Indiana Civil Rights Commission and the Equal Employment Opportunity Commission ("EEOC") on the same day, alleging discrimination based on race, sex, national origin, retaliation, and hostile work environment (Filing No. 62-50).

**D.**     **The Second Half of the 2021-2022 School Year: Extension of the Second Improvement Plan, Incident between Cole and Stringham, and Stringham's Eventual Termination**

Stringham returned to school from her medical leave on January 11, 2022 (Filing No. 54-1 at 89). Ten days later, on January 21, 2022, a Formal Plan of Assistance was extended by evaluators Cole and Borto (Filing No. 62-18). On January 23, 2022, Cole sent Stringham an additional thirty artifacts with written narrative comments for each (Filing No. 62-21 at 51–69, 71–81, 83). Each provided a rating of "Improvement Necessary" or "Ineffective".

At some point in January 2022, Stringham presented Cole with an application for her mental health license (Filing No. 54-2 at 12-13). Stringham wanted Cole to fill out certain forms that Stringham needed for her licensure as a mental health counselor associate, and the verification of an internship for the same licensure. *Id.* at 12; Filing No. 54-16 at 9, 10. Cole believed it was inaccurate to provide certification of an internship and refused to sign the forms (Filing No. 54-1 at 92).

On January 28, 2022, Stringham approached Cole in her office (Filing No. 54-1 at 92). Stringham did not sit down and a desk and two chairs remained between them. *Id.* at 92, 93. Stringham asserts the pair had a conversation with no outbursts (Filing No. 62-24 at 1). After listening to Stringham's explanation that the state needed verification she had been an acting

professional school counselor for the past seven-and-one-half years, Cole stated she was not going to sign the forms (Filing No. 54-1 at 93).  Stringham told Cole that she could call the state and ask the professional board, which Cole refused to do.  Stringham asked Cole to "put it on letterhead," which Cole refused to do.  *Id*.  Stringham admits she is "a person that talks passionately" and she was upset that Cole was being "dismissive and curt", but denies that she yelled (Filing No. 62-26 at 70-71).  During the conversation, Cole was "passionate about what she was saying" and raised her voice.  *Id*. at 71.  Stringham answered affirmatively when later asked if she would describe Cole's tone as aggressive (Filing No. 54-1 at 94).  At some point, Stringham stated Cole was being ridiculous, and Cole snapped at her before Borto entered the room.  *Id*.[3]

Following the interaction, Stringham emailed Oestreich that she was tired of Cole's discrimination against her (Filing No. 62-15 at 1).  Three days later, on January 31, 2022, the school district placed Stringham on paid administrative leave pending review, which would continue until she was notified otherwise (Filing No. 62-6).

On February 4, 2022, Harmas preliminarily decided to cancel Stringham's teaching contract based on her alleged "unprofessional behavior directed towards [Cole]" on January 28, 2022, "continued job performance that falls below" what was expected, and continued errors — reasons "constitut[ing] insubordination, incompetence, neglect of duty and other good and just cause within the meaning of Indiana Code section 20-28-7.5-1(b)(6)."  (Filing No. 62-7 at 1.) Through counsel, Stringham timely requested a private conference with the Superintendent to discuss the preliminary decision (Filing No. 62-40), which was held on February 24, 2020.  (*See* Filing No. 62-8.)  Stringham filed an amended EEOC charge (Filing No. 62-38), and she requested,

---

[3] Cole and Borto's version of the January 28 incident is vastly different. Cole contends that Stringham raised her voice at Cole and Borto observed Stringham leaning over Cole's desk and "yelling at Rachel to sign papers . . . .(Filing No. 54-1 at 47 and 129). But as required under Rule 56, the Court views the evidence in the light most favorable to Stringham and draw[s] all reasonable inferences in Stringham's favor and accepts Stringham's version of the incident.

through counsel, a private conference with the Carmel Clay School Board (the "Board") (Filing No. 62-41).

On March 1, 2022, Superintendent Beresford recommended the termination of Stringham's regular teacher contract based on his review and Stringham's presentation at the February 24, 2022 conference (Filing No. 62-8).

Stringham, the Carmel Clay School Administration, and the Board, each represented by counsel, appeared at the March 15, 2022 hearing (Filing No. 54-1 at 3-4).  Over approximately four hours, Stringham and the Carmel Clay School Administration examined and cross-examined witnesses and stipulated to seventy-six exhibits, all of which were admitted into the record without objection, plus one Board exhibit (Filing No. 54-1; Filing No. 62-23 at 2).  Findings of Fact and Conclusions of Law followed, and the Board unanimously decided to cancel Stringham's regular teacher contract (Filing No. 62-23). The Board rejected Stringham's claims that the School administration's true motivation for terminating her was animus based on her race/ethnicity or her sexual orientation. (Filing No. 1-1 at 15). The Board concluded that Stringham could not show she was meeting legitimate work performance expectation after the fall 2019; she could not show that similarly-situated counselors were treated more favorably; she offered nothing more than a "pure guess" to support her claim that the School administration's proffered reasons for canceling her contract were a pretext; and that it was illogical to infer that Cole harbored animus based on Stringham's sexual orientation because Cole gave her "the highest performance rating" for four consecutive years despite knowing her sexual orientation. (Filing No. 1-1 at 16-18).

Stringham initiated this action on April 27, 2022 (Filing No. 1), and filed an Amended Complaint on September 15, 2022 (*see* Filing No. 27).

## II.   SUMMARY JUDGMENT LEGAL STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007).  That is, summary judgment is appropriate if, on the evidence provided, no reasonable jury could return a verdict in favor of the non-movant.  *See Celotex Corp.*, 477 U.S. 317, 322 (1986); *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012).

In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted).  "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted).  Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial."  *Hemsworth*, 476 F.3d at 490 (citation omitted).  "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence."  *Sink v. Knox Cnty. Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. Sept. 19, 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits

of [the] claim." *Ritchie v. Glidden Co*., 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted).  "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Burton v. Kohn L. Firm, S.C*., 934 F.3d 572, 579 (7th Cir. 2019) (quoting *Siegel v. Shell Oil Co*., 612 F.3d 932, 937 (7th Cir. 2010)).

The Court views the designated evidence in the light most favorable to Stringham as the non-moving party and draws all reasonable inferences in her favor.  *Bright v. CCA*, No. 10-cv-1690, 2013 WL 6047505, at *3 (S.D. Ind. Nov. 14, 2013).  "However, employment discrimination cases are extremely fact-intensive, and neither appellate courts nor district courts are obliged in our adversary system to scour the record looking for factual disputes." *Id*. (citation and quotation marks omitted); *see Reed v. Brex, Inc*., 8 F.4th 569, 578 (7th Cir. 2021) ("Summary judgment is the proverbial put up or shut up moment in a lawsuit." (quotation marks and citations omitted)).

### III.    DISCUSSION

Stringham's brings claims against the Defendants for Count I: Violation of the 14th Amendment to the United States Constitution (Carmel's Decision to Terminate Mrs. Stringham was Arbitrary and Capricious); Count II: Petition for Review Pursuant to  Ind. Code § 4-21.5-5-14; Count III: Race Discrimination in violation of Title VII the Civil Rights Act of 1964; Count IV: Retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3; Count V: National Origin Discrimination in violation of Title VII of the Civil Rights Act of 1964; Count VI: Retaliation in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3; Count VII: Sex Discrimination in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3; and Count VIII: Retaliation in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3. The Court will first address the Motion for Leave to File Surreply and then turn to the parties' summary judgment arguments.

A.      **Motion to File Surreply**

Stringham alleges the Defendants advanced six new arguments in their reply brief ([Filing No. 72](#)), to which she requests an opportunity to respond in a surreply ([Filing No. 75 at 2](#)). Defendants respond that their arguments either answer arguments made in her response brief or explain why Stringham's designated evidence does not create a factual dispute ([Filing No. 78 at 2-4](#)). Courts allow a surreply brief only in "limited circumstances" to address new arguments or evidence raised in the reply brief or objections to the admissibility of the evidence cited in the response. *Lawrenceburg Power, LLC v. Lawrenceburg Mun. Utils*., 410 F. Supp. 3d 943, 949 (S.D. Ind. Sept. 30, 2019); S.D. Ind. L.R. 56-1(d). This is to prevent the nonmovant party from being sandbagged. *Reis v. Robbins*, No. 14-cv-63, 2015 WL 846526, at *2 (S.D. Ind. Feb. 26, 2015). A party, however, may expand upon and clarify arguments in its reply brief. *Id*. (citing *Ripberger v. Corizon, Inc*., No. 11-cv-1394, 2012 WL 4340716, * 1 (S.D. Ind. Sept. 20, 2012)).

First, Stringham alleges that for the first time, Defendants argue that Cole "could not have animus against []Stringham" because Defendants "ultimately provided the information []Stringham needed for her Mental Health Counselor forms. [Dkt. 72 at 5-6]." ([Filing No. 75 at 2](#).) Thus, Stringham wishes to refute this new argument. Defendants dispute such an assertion as lacking in support and reason that Stringham "overlook[ed] that the School provided her with the 'needed information'" ([Filing No. 72 at 6](#)). Given Stringham's designated evidence and the response brief's related argument that Cole influenced the outcome of her contract cancellation ([Filing No. 70 at 34](#)), the Court finds this rebuttal to be proper. Defendants' argument merely replies to Stringham's allegations by asserting that any such refusal to sign by Cole did not

constitute proof of animus on Cole's part.  Reply briefs are for exactly that — replying.  *See Reis*, 2015 WL 846526, at *2.

Second, Stringham contends that "Carmel advances another new argument that []Stringham misinterpreted the Civility and Decorum Policy" (Filing No. 75 at 2.)  Defendants did not initially rely on the policy in moving for summary judgment; rather, it was Stringham who first designated it to support her assertions that Defendants never reminded her to remain civil or be respectful and courteous and never attempted to progressively discipline her.  (*See* Filing No. 70 at 15.)  In its response brief, Defendants simply aver that Stringham misinterpreted the policy and argue for a different interpretation.  This is permissible.  *See, e.g., Eagle Corp. v. H2O Industrial Services, Inc*., 2005 WL 1429279 (N.D. Ind. Jun. 8, 2005 ("[T]he arguments . . . that are raised for the first time in the defendant's reply are addressed only because the plaintiff raised the [same issue] in its response.  It is logical that defendant addressed the plaintiff's arguments in its reply.").

Third, Stringham contends that in their Response for the first time, Carmel argues that Stringham cannot cite exclusively to her own testimony and declaration regarding what occurred between Cole and Stringham.  (Filing No. 72 at 7-8.)  She wishes to refute this "new" argument in her surreply.  A surreply is not necessary to address this concern.  The Court observes and always takes into consideration the Seventh Circuit's guidance concerning self-serving affidavits—such as those cited by Stringham in her proposed surreply.  (*See* Filing No. 75-1 at 5 (citing *McKinney v. Office of the Sheriff*, 866 F.3d 803 (7th Cir. 2017)).)  The Court notes that at this stage of the proceedings, it must resolve any disputed facts in Stringham's favor, including that the conversation in question was held without outbursts.

Fourth, Stringham argues a surreply is needed because for the first time, Carmel argues she received so many artifacts "precisely because she was on an improvement plan that necessarily

required closer scrutiny of her day-to-day activities. [Dkt. 72 at 12]." (Filing No. 75 at 2.)  The Court notes Defendants assert in their initial summary judgment brief that Cole uploaded artifacts to help Stringham better understand the issues which Cole saw and to address Stringham's concerns about not receiving written feedback (Filing No. 55 at 10).  In the designated evidence to which Defendants cite, Oestreich explained Stringham's concerns and that she was on an improvement plan, before continuing: "[T]herefore, I know that [] Cole wanted to get everything in writing for [Stringham] so she could better understand." (Filing No. 54-11 at 4.)  In response, Stringham heavily relied on the numerosity of artifacts issued by Cole and advanced various points concerning the issue of artifacts and feedback, including that the artifacts for all other counselors were positive and Cole provided only her with negative feedback.  Stringham reiterates these same points in her proposed surreply.  The Court does not view the statement in Defendants' reply brief — that Stringham overlooked she was an outlier as to the number of artifacts received "precisely because she was on an improvement plan that necessarily required closer scrutiny of her day-to-day activities" (Filing No. 72 at 12) — as a new argument sufficient to grant leave to file a surreply.

Fifth, Stringham contends that Defendants "ignore[] evidence" in their reply brief regarding Cole's alleged involvement in cancelling her contract is misplaced (Filing No. 75 at 2). In so arguing, Stringham does not advance (or otherwise demonstrate) that Defendants cited new evidence or objected to the admissibility of evidence, *see* S.D. Ind. L.R. 56-1(d), but only submits for the Court's reconsideration evidence and argument already introduced in her response brief.

Sixth, Stringham contends that for the first time, Defendants argue that she has waived several of her claims.  (Filing No. 75 at 2.)  Defendants' assertions of waiver in their reply brief are simply the movant's attempt to have the "final opportunity to be heard and to rebut the non-movant's response" — albeit by discussing what they perceive to be a lack of response — and

thereby persuade that they are entitled to summary judgment. *Lady Di's, Inc. v. Enhanced Servs. Billing, Inc*., No. 09-cv-340, 2010 WL 1258052, at *2 (S.D. Ind. Mar. 25, 2010).

In sum, the Court determines that Defendants' reply brief did not inject new evidence, arguments, or issues. Instead, the reply brief provides Defendants' rebuttal to arguments Stringham advanced in her response brief.[4]  As a result, Stringham's Motion for Leave to File Surreply and Supplemental Designation of Evidence is **denied**.  Neither the surreply nor her responsive filings are considered in this Order.

**B.** **Title VII Claims**

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin".  42 U.S.C. § 2000e-2 (2010).  Stringham alleges she was subject to discrimination, in violation of Title VII, based on her race, national origin, sex,[5] and retaliation for engaging in protected behavior.

**1.** **Preliminary Matter: Harassment Claims**

Stringham's claims of discrimination based on her race, national origin, and sex discrimination consists of "heightened scrutiny of her work", "being ridiculed and harassed on a daily basis", "being subjected to unfair disciplinary procedures", and "being subjected to a hostile work environment".  (Filing No. 27 at 13, 14, and 16.)  Both her EEOC charge and amended charge

---

[4] Even if the Court were to consider the proposed surreply, it would have little to no impact since it admittedly imports lines of reasoning already presented by previous briefing.

[5] Whether Stringham states "sex discrimination" but intends "sexual orientation discrimination", or vice versa, is of no import for purposes of this analysis; Title VII bans workplace discrimination on the basis of either.  *See Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731 (2020) (holding that an employer who fires an individual merely for being gay violates Title VII).

of discrimination similarly assert "Hostile Work Environment" as an "Other" basis upon which her allegations rest (Filing No. 62-50 at 1; Filing No. 62-38 at 1).

Defendants devote a section of their summary judgment brief to discussing a potential hostile work environment claim, and they argue with support from legal authority that the evidence does not support such a claim (*see* Filing No. 55 at 29–32).  Despite this, Stringham's summary judgment response brief says nothing regarding hostile work environment claims.  A necessary, elements of a hostile work environment claim is that the alleged harassment must be "so severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment."  *Demkovich v. St. Andrew the Apostle Par., Calumet City*, 3 F.4th 968, 977 (7th Cir. 2021). Stringham says nothing about a work environment with harassment that was "so severe or pervasive as to alter the conditions of employment", and she does not delineate in her argument section the work environment in terms of being subjectively or objectively hostile.  Importantly, Stringham does not respond to the Defendants' argument against a potential claim for a hostile work environment.

Where a party makes no attempt to respond to an argument concerning a claim at summary judgment, the issue is deemed abandoned and waived.  *See, e.g., Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver," and "silence leaves us to conclude" a concession.); *Palmer v. Marion Cnty.*, 327 F.3d 588, 597–98 (7th Cir. 2003) (holding that claims not addressed in a summary judgment opposition brief are deemed abandoned).  Because Stringham has waived any hostile work environment claims, her Title VII claims are for only discrete acts of discrimination, not a hostile work environment.

**2.**     **Discrimination Claims**

As the Seventh Circuit has indicated, "all discrimination cases present the same basic legal inquiry: At the summary-judgment stage, the proper question to ask is 'whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the [plaintiff's] discharge or other adverse employment action.'" *Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 499 (7th Cir. 2017) (quoting *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)).

*Ortiz's* instructs that the inquiry of whether the evidence, considered as a whole, permits the reasonable factfinder to conclude that a proscribed factor caused the adverse action. 834 F.3d at 765. As a means of "organizing, presenting, and assessing circumstantial evidence in frequently recurring factual patterns found in discrimination cases," the court employs the well-known burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *David v. Bd. of Trustees of Cmty. Coll. Dist. No.* 508, 846 F.3d 216, 224 (7th Cir. 2017). To make a prima facie case under *McDonnell Douglas*, a plaintiff must show: (1) she belongs to a protected class; (2) she met her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) another similarly situated employee outside of her protected class received better treatment from her employer. *Marshall v. Ind. Dep't of Correction*, 973 F.3d 789, 791-92 (7th Cir. 2020). Stringham does not solely rely on the *McDonnell Douglas* burden shifting method, rather, she seeks to present "direct or circumstantial evidence that supports an inference of intentional discrimination." *Joll v. Valparaiso Cmty. Sch.*, 953 F.3d 923, 929 (7th Cir. 2020) (citation omitted). She relies on "ambiguous or suggestive comments or conduct; better treatment of people similarly situated but for the protected characteristic; and dishonest employer justifications for disparate treatment" *Id*. After surveying the whole picture, no reasonable jury could find a discriminatory intent caused Defendants' actions based on the evidence Stringham provides.

### a.   **Cole's Discriminatory Intent**

In her response brief, Stringham offers an assortment of circumstantial evidence, focused on Cole, to demonstrate discriminatory intent on behalf of Defendants in terminating her employment.[6]  She first points to Cole's alleged confusion about the use of pronouns, failure to notify staff about an activity that potentially used a "white power" symbol involving fingers, and lack of explicit symbolic and financial support for LGBTQ causes and organizations to collectively show the Defendants generalized animus toward sexual and racial minorities.

The circumstantial evidence Stringham relies upon does not support her discrimination claims or permit the necessary inferences to support her contentions.  Stringham contends that Knoop, a Social Worker at Carmel High School, stated that Cole told Knoop that she did not understand why people used pronouns to identify themselves and that Cole did not use pronouns to identify herself.  (Filing No. 62-29 and 62-30 at 8:18-24; 18:23-19:2; 19:7-11.)  But Knoop testified that while Cole stated that she did not understand pronoun usage, Cole was merely seeking an explanation and wanting to receive education by discussing pronouns with her.  Knoop did not represent that Cole was indignant or non-receptive or disagreeable to the usage of pronouns, when Cole stated that she "did not understand why" people used pronouns to identify themselves (Filing No. 70 at 24).

Stringham designates that she reported to Cole that a white power symbol was used in documents at Carmel Clay, and Cole did not notify the staff about the potential white power symbol.[7]  Cole testified that she was the person who "told [another person] who had told

---

[6] Stringham narrowly tailors her discrimination argument on Carmel Clay's discharge of her (*see, e.g.*, Filing No. 70 at 22, 28, and 29), despite making various assertions of other pre-discharge discriminatory actions in her Amended Complaint (*see* Filing No. 27 at 13, 14, and 16).

[7] It is worth noting that this remains the sole alleged action or factual proposition involving race or ethnicity to which Stringham points to evidence discrimination based on her race or national origin.

[Stringham] that some people view – could view [the finger symbol] as … white pride or … something different than what [was] intend[ed]." (Filing No. 62-36 at 34.)  Stringham argues that this coupled with the fact that Cole did not further notify staff about the potential symbol, means that Cole tacitly agreed to, or promoted, the usage of racial, pro-white symbology.  But it does not. Cole first discovered the symbol, then told someone who told Stringham, and then, for reasons undisclosed by the record, did not continue in informing the entire staff.  No reasonable juror could extrapolate discriminatory animus from a specific lack of support for certain causes without additional evidence.

Stringham next points to Cole's deposition testimony in which she admitted to making derogatory comments about Cartwright, who was dating women, to further suggest Cole's discriminatory animus against Stringham who was married to a woman.  In context, however, the testimony is Cole's admission that she was "[f]rustrated that the support [Cartwright] was giving kids was not in the direction we wanted to go", which she clarified by giving an example of Cartwright "keeping a student 90 minutes during a math class".  (Filing No. 68 at 6.)  In that same deposition, when asked "would you consider yourself an ally to the LGBTQ community?" Cole responded "yes". (Filing No. 62-36 at 32).  When asked how she showed allyship, Cole testified that she had an "ally rainbow" in her office and showed allyship to the LGBTQ community in "how [she] treat[ed] people". *Id*. at 33 This designated evidence negates the inference sought--that Cole does not support the LGBTQ community. These two incidents neither support Stringham's assertions that Cole made derogatory comments concerning Cartwright's sexuality, nor serves as circumstantial evidence of any discriminatory intent by Cole toward Stringham.

Stringham relies heavily on hearsay statements made in an attorney letter to Defendants and within her filings with the EEOC, as well as other out-of-court statements she asserts Cole made to Cartwright and Cartwright made to her, and out-of-court statements Cartwright made to Oestreich.  But Stringham does not make any attempt to show that these out-of-court statements fall into a definitional exclusion or any exception to the rule against hearsay.  Generally, such out-of-court statements are inadmissible evidence and therefore cannot be used to defeat summary judgment.  *See, e.g., Aguilar v. Gaston-Camara*, 861 F.3d 626, 631 (7th Cir. 2017) (inadmissible hearsay cannot be used on summary judgment).  Nevertheless, since Stringham relies heavily on these statements, further discussion is merited.

### i.   Hearsay Statements concerning Cartwright

Concerning Stringham's first internal complaint reciting that Cole told Cartwright in March or April 2019 that she did not think Cartwright dating women was a good idea, the Court finds this an inadmissible hearsay statement. The first or inner-most layer of potential hearsay in this communication, consisting of Cole's statement to Cartwright, could arguably be admissible (were it offered by itself) as an admission of a party's agent within the scope of the agency under Federal Rule of Evidence 801(d)(2)(D).  However, the second layer of potential hearsay of the chain, consisting of Cartwright's communication to Stringham, is an out-of-court statement that does not fall into a definitional exclusion or any exception to the rule against hearsay, thus making the entire communication inadmissible.  *Cf* Fed. R. Evid. 805 ("Hearsay within hearsay is not excluded . . . if *each part* of the combined statements conforms with an exception to the rule.") (emphasis added).

Admissibility aside, the remark was made approximately sixteen (or seventeen) months before the first alleged adverse employment action and is therefore insufficient to point to a

discriminatory reason for Stringham's termination. *See Petts v. Rockledge Furniture LLC*, 534 F.3d 715, 721 (7th Cir. 2008) ("We previously have concluded that a … comment made more than a year before the adverse action fails to constitute evidence of discrimination under the direct method."). This logic also applies to the instruction by Stringham's co-worker not to tell people she was gay because that could spell trouble – a comment which was made within the *first or second week* of Stringham's more than seven years of employment.

Concerning the statement in the attorney letter and EEOC filings reciting that Cartwright told Stringham that she believed Cole was targeting her (Cartwright) for dating someone of the same sex, the Court finds that the statement is inadmissible to prove the truth of the matter asserted therein. This statement does not fit any definitional exclusion or any exception to the rule against hearsay.[8]  The Court finds similarly inadmissible the statement in Stringham's September 2020 internal complaint of discrimination reciting that Cartwright told Stringham that she thought things changed after Cartwright started dating women.  The Court additionally observes that Stringham does not explain what changed, or how any such changes (related to Cartwright) either informed, or were connected to, Cole's purported discriminatory animus toward Stringham.

### ii.        <u>Hearsay Statements Concerning Stringham</u>

Concerning the statement in the attorney letter and EEOC filings reciting that Cole had first asked Cartwright if she could believe Stringham was married to a woman and then stated that that was weird, the Court finds that at least one of the layers of potential hearsay makes the statement and preceding question inadmissible.  The evidence establishes that Cole became

---

[8] To the extent that Stringham suggests that these or other statements fit under an excited utterance exception to the rule against hearsay, the record does not establish Cartwright was under the stress of excitement caused by a startling event or condition at the time they were made.

Stringham's supervisor in December 2016, a position she assumed after working as a counselor. The evidence does not establish timing of Cole's alleged comment to Cartwright about Stringham, which would have been shared by Cartwright "5 or 6 years" prior to Oestreich's October 2020 report (Filing No. 62-11 at 3 (emphasis added)). The account provided in Stringham's first internal complaint does not provide clarity as to when Cole made the comment to Cartwright. Stringham has failed to lay a foundation or otherwise make any argument as to whether the matters spoken about in the conversation involving this wayward exchange were within the scope of employment at the time they were made. This Court cannot make such an assumption under Fed. R. Evid. 801(d)(2)(D) when it is not proved by a preponderance of the evidence. Accordingly, the Court finds the statement inadmissible and unable to be used to defeat summary judgment. Moreover, it remains distant in time from her termination and, not shown to have any connection to the termination decision.

As for Cole's question to Cartwright – "Can you believe Stringham is married to a woman?" — the Seventh Circuit has instructed that, generally, a question that does not assert a statement of fact is not considered a statement for purposes of Fed. R. Evid. 801(a). *See Baines v. Walgreen Co.*, 863 F.3d 656, 662 (7th Cir. 2017) ("[Statements] are distinct from other forms of communication, such as questions or commands."); *see also United States v. Love*, 706 F.3d 832, 840 (7th Cir. 2013) ("[Q]uestions are not 'statements' and therefore are not hearsay.") (citation omitted) (collecting cases).

Nevertheless, "[i]t is possible in certain contexts for a question . . . to function effectively as an assertion". *Baines*, 863 F.3d at 662. The intent behind a remark dictates whether it is a statement or a question for hearsay purposes, and the context surrounding the remark may assist in ascertaining the declarant's intent. *United States v. Pulliam*, 973 F.3d 775, 783 (7th Cir. 2020),

22

*as amended* (Sept. 8, 2020).  Although the record here is ambiguous, the Court concludes that the question, when considered with the statement that immediately followed, along with the context provided by Stringham's narrative in her first internal complaint, was a substantive assertion meant to posit a proposition that may be true or false.  (*See* Filing No. 62-10 at 13 ("[Cartwright] tells me [that] during one of their meetings that [Cole] could not believe that I was married to a man and then [would] marry a woman, and isn't that weird.")).  Thus, for the reasoning described above as it pertains to the statement, the Court finds the question similarly inadmissible.

The statement Stringham relies upon in Oestreich's testimony fails like the statements above: Cartwright's statement to Oestreich — that Cole had commented to her about the "odd"-ity of Stringham's relationship with women — is part of a larger chain of hearsay within hearsay, with at least one of the layers rendering the statement inadmissible.

In sum, while this Court acknowledges and agrees that "[a] remark or action by a decision-maker reflecting unlawful animus may be evidence of his or her attitudes more generally," *Joll*, 953 F.3d at 934, Stringham does not offer admissible relevant evidence revealing a discriminatory animus toward Stringham on Cole's behalf, as discussed above.  Even if the comments were admissible, the evidence shows that these inappropriate comments made about Stringham were at best sporadic, isolated, and insufficient to support sex discrimination by Defendants.  The circumstantial evidence Stringham offers does not "support[] an inference of intentional discrimination", *id.* at 929, and she fails to point directly to a discriminatory reason for her termination. Stringham has not presented sufficient evidence to establish a claim of discrimination under Title VII through the direct method or through circumstantial evidence.  *Harper v. Fulton Cty., Ill.*, 748 F.3d 761, 767 (7th Cir. 2014) ("And even if the testimony had some circumstantial

relevance, the totality of [plaintiff's] evidence is simply insufficient to establish intentional sex discrimination.").

    **b.**    <u>**Legitimate Employment Expectations**</u>

Under the indirect method, Stringham must first demonstrate a *prima facie* case of discrimination. The Court turns next to Defendants' argument that Stringham did not meet the legitimate expectations of her employer. Defendants point to Stringham's performance from the 2019–2020 school year onward, as expressed through testimony given at the Board hearing, Stringham's improvement plans, and the numerous artifacts submitted by Cole (Filing No. 55 at 27 (citing *id.* at 4–17)). They also rely in part on the January 28, 2022 interaction between Cole and Stringham. Defendants assert that the aforementioned facts conclusively establish legitimate, non-discriminatory reasons for all actions taken toward Stringham, including the decision to initiate her termination proceedings.

In response, Stringham maintains she never received any "Ineffective" and/or "Improvement Necessary" designations on any individual or overall categories of her performance evaluation during her entire tenure and cites as support her seven annual reviews.

The proper inquiry requires looking at Stringham's job performance through the eyes of Defendants at the time relevant to the initiation of her termination proceedings. *See Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 574 (7th Cir. 2021) (quoting *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 689 (7th Cir. 2008)). It does not matter that Stringham met Defendants' legitimate expectations prior to the decline in performance in Spring 2020. *See Anders v. Waste Mgmt. of Wis., Inc.*, 463 F.3d 670, 676 (7th Cir. 2006) ("[T]he inquiry must focus on [the employee's] performance at the time of his dismissal."); *see also Fortier v. Ameritech Mobile Commc'ns, Inc.*, 161 F.3d 1106, 1113 (7th Cir. 1998) ("Certainly, earlier evaluations cannot, by themselves, demonstrate the adequacy of performance at the crucial time when the employment

action is taken."). While it remains arguable that Stringham may point to her last two positive annual evaluations, Defendants are correct that overall ratings do not reflect the entirety of her performance. The Court notes specifically the written narrative comments appearing in Stringham's 2020–2021 evaluation: "While the evidence of your work this year would indicate needs improvement on the finalization, we are using our professional judgement [sic] this year to round up your score to effective." (Filing No. 62-14 at 17.)

Nevertheless, the question is not whether Defendants' opinion regarding her performance at that time was *right* but whether it was *honest*. *See Khungar*, 985 F.3d at 574 (quoting *Gustovich v. AT & T Commc'ns, Inc.*, 972 F.2d 845, 848 (7th Cir. 1992)). Stringham asserts Cole targeted and treated her differently than other counselors after submitting the internal discrimination complaints. The Court interprets this as argument that the documentary evidence, associated mostly with Cole, should be discredited as pretextual.

The record demonstrates that Cole, who first expressed performance concerns to Stringham in her June 2020 end-of-year evaluation, was not alone in believing that Stringham was not meeting expectations. Borto also had ample reason to believe as much when she testified to the Board that she thought contract cancellation was "necessary because we have progressively gone through disciplinary action to the point where it was clear that her performance wasn't improving, our kids were still suffering and struggling because of her performance". (Filing No. 54-1 at 49.) Borto met with Stringham first in Fall 2020 alongside Cole to review the First Improvement Plan; then in Spring 2021 by herself to discuss graduating seniors; and finally, several times in Summer and Fall 2021 with Cole to discuss, and ultimately recommended continuing Stringham's Second Improvement Plan. Borto supported the artifacts being uploaded during the 2021-2022 school year. *Id.* She also witnessed the January 28, 2022 exchange between Cole and Stringham and

recommended to Harmas as a result that contract cancellation be pursued. *Id.* at 47-48. Stringham presents no evidence to question the honesty or reliability of Borto's evaluation of her performance.

Stringham's argument is based upon her disagreement with the work performance assessments she received, including those given by Cole, but this is insufficient to survive summary judgment. The Court finds that Stringham has failed to meet her employer's legitimate expectations and, consequently, has failed to establish her *prima facie* case.

### c.   Similarly Situated Employees

Defendants point to the Board finding that Stringham was, "an extreme outlier when it came to performance and how a subordinate should interact with her supervisor" and contend Stringham cannot identify any similarly situated co-worker. (Filing No. 55 at 27). Although a comparator need not be identically positioned, "similarly situated employees must be 'directly comparable' to the plaintiff 'in all material respects.'" *Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 365-66 (7th Cir. 2009) (quoting *Raymond v. Ameritech Corp.*, 442 F.3d 600, 610-11 (7th Cir. 2006)). "Whether a comparator is similarly situated is typically a question for the fact finder, unless, of course, the plaintiff has no evidence from which a reasonable fact finder could conclude that the plaintiff met his burden on this issue." *Johnson v. Advocate Health and Hospitals Corp.*, 892 F.3d 887, 895 (7th Cir. 2018). In cases like this one, where the plaintiff alleges the employer disciplined her more harshly than her comparators, the most relevant similarities are those between the employees' alleged misconduct, performance standards, and disciplining supervisor. *Reives v. Illinois State Police*, 29 F.4th 887, 892 (7th Cir. 2022) (citing *Coleman v. Donahoe*, 667 F.3d 835, 863 (7th Cir. 2012)). Stringham's four potential comparators were all counselors under Cole, which the Court infers to mean that they were subject to the same performance standards and disciplining supervisor(s).

26

However, very little is known about each of the counselors' alleged misconduct: in the first case (Rachel), it was "mistake[s] that [she'd] made" (Filing No. 62-27 at 27); in the second case (Dave), it was forgetting to add a student to a waitlist (Filing No. 62-5 at 1); in the third case (Kevin), it was having a student who returned for a fifth year (Filing No. 62-36 at 18–19); and in the fourth case (Bettina), it was yelling at Cole during a meeting, slamming a door, and walking out of the building (Filing No. 62-24 at 2).  As to Rachel and Dave, a reasonable factfinder could not find Stringham has met her burden in providing evidence that supports an inference that the two counselors and Stringham engaged in "conduct of comparable seriousness."  *Peirick v. Ind. Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 689 (7th Cir. 2007).

Though Kevin and Bettina may be better comparators, the Court ultimately comes to the same conclusion that they are not similarly situated.  Though Kevin had a student who did not graduate, Stringham's Second Improvement Plan addressed, and any adverse employment actions resulted from, a *lack of communication* regarding potentially non-graduating students, not from the failure to graduate *per se*.  Stringham has not submitted any evidence showing the counselor failed in his communications.  Furthermore, Stringham has not submitted any evidence showing that she was disciplined for an incident "[s]ometime in 2018" when she was angry at Cole in her office and slammed the door (Filing No. 54-1 at 108).  Accordingly, Stringham has submitted no evidence demonstrating that "there were no differentiating or mitigating circumstances that would distinguish" Defendants' treatment of her as compared to their treatment of these two counselors. *Johnson v. Chi. Transit Auth.*, 699 Fed.Appx. 558, 559 (7th Cir. 2017), *reh'g denied* (Nov. 20, 2017) (internal quotation and citation omitted).  In conclusion, Stringham has not made a *prima facie* case for discrimination under Title VII.

Even if Stringham had succeeded in establishing a *prima facie* case, Defendants have articulated legitimate, non-discriminatory reasons for their action based on deficiencies in her performance and the events related to the January 28, 2022 incident, supporting a finding that unlawful discrimination was not the cause of the employment action. Thus, Stringham would have to establish that these proffered reasons are pretextual. She fails to meet this burden under both the direct and indirect methods. The Court's evaluation of the evidence, presented as a whole and providing all reasonable inferences to Stringham as the non-moving party, convinces it a trier of fact could not conclude that Defendants terminated her for impermissible reasons. The Court finds no genuine issues of material facts in dispute and thus **grants** summary judgment for Defendants on Stringham's Title VII discrimination claims.

### 3.    Retaliation Claims

Title VII also forbids an employer from discriminating against an employee who has "opposed any practice" made unlawful by Title VII or who "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e–3(a) (2010). As with a discrimination claim, a plaintiff may prove retaliation through either the direct or indirect method. *See Scruggs v. Garst Seed Co.*, 587 F.3d 832, 838 (7th Cir. 2009). To succeed on a Title VII retaliation claim, a plaintiff "must offer evidence of: (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 718 (7th Cir. 2018).

Stringham easily demonstrates the first element. She engaged in statutorily protected activity when she complained internally of being targeted by Cole because she was a homosexual Hispanic woman in her September 2020 complaint; she accused Cole, again, in her second internal

complaint of intolerance and retaliation on January 3, 2022; and she emailed Oestreich following the January 28, 2022 incident that she felt Cole discriminated against her because she was gay or Latina or both.  *See Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006). Undoubtedly, Stringham engaged in protected activity when she also filed her EEOC charge on January 3, 2022, and an amended EEOC charge on February 25, 2022, alleging discrimination because of her "sexual orientation . . . race and/or national origin".  (Filing No. 62-50 at 2; Filing No. 62-38 at 2.)  *See McHale v. McDonough*, 41 F.4th 866, 871 (7th Cir. 2022).

The dispositive question is whether Stringham offers sufficient evidence of the remaining elements: a materially adverse action taken by the employer; and a causal connection between the two.

### a.   The First Improvement Plan

Stringham argues that the Defendants retaliated against her for filing her first internal complaint by implementing the First Improvement Plan. McDaniel and Cole witnessed deficiencies in her abilities, however, in April 2020, before she filed the internal complaint the following school year.  While a sudden decline in performance evaluation *after* an employee engages in a protected activity may provide circumstantial evidence of discriminatory intent, a decline in performance *before* the employee engages in protected activity does not allow for an inference of retaliation.  *See Long v. Teachers' Ret. Sys. of Illinois*, 585 F.3d 344, 354 (7th Cir. 2009). *See also Durkin v. City of Chicago*, 341 F.3d 606, 614 (7th Cir. 2003) ("It is axiomatic that a plaintiff engage in statutorily protected activity before an employer can retaliate against her for engaging in statutorily protected activity. . . .  An employer cannot retaliate if there is nothing for it to retaliate against.").  Because a decline in Stringham's performance began at least several months before Stringham filed her complaint, the decline in her performance evaluation associated with the First Improvement Plan cannot provide circumstantial evidence of retaliatory intent.

**b.**      **The Second Improvement Plan and Ensuing Artifacts**

After Stringham complained again in January 2022, however, Cole and Borto extended the Second Improvement Plan.  Stringham contested the plan yet still received an additional thirty artifacts beyond the thirty-one she had previously received in the preceding Fall.  Defendants contend that the improvement plans, in requiring Stringham to perform tasks expected of any high school guidance counselor, and the artifacts, in providing feedback, would not dissuade her from engaging in protected behavior ([Filing No. 55 at 33](#)) (citing *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 889 (7th Cir. 2016)).  Disregarding that Stringham did subsequently engage in other protected behavior, this Court finds that under the more generous standard that governs retaliation claims, that Stringham has suffered the necessary harm by Defendants' pair of actions. *See Chaib v. Indiana*, 744 F.3d 974, 987 (7th Cir. 2014) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)), *overruled on other grounds by Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016).

The Seventh Circuit has explained that "[p]erformance improvement plans, particularly minimally onerous ones…, are not, without more, adverse employment actions." See *Davis v. Time Warner Cable of Se. Wisconsin, L.P.*, 651 F.3d 664, 677 (7th Cir. 2011). Here, the Second Improvement Plan, while admittedly not "particularly minimally onerous" by itself, was not "without more".  In the context it was extended, this plan was indeed "more".  Since Cole placed no other counselors on improvement plans ([Filing No. 54-1 at 134](#)), even those who made errors on their student graduation audits, *id.* at 135, Stringham was singled out as the only counselor ever placed on an improvement plan.  Stringham endured this solitary status for over fifteen months, at times taking a medical leave exceeding two months due to being suicidal and having heightened blood pressure, stress level, and anxiety.

Moreover, in the span of a single day, January 23, 2022, Cole initiated an additional thirty artifacts, all with ratings of "Improvement Necessary" or "Ineffective" following detailed narratives of Stringham's shortcomings (*see* Filing No. 62-21 at 51-69, 71-81, 83). The record shows artifacts are used or considered in a teacher's evaluation (*see* Filing No. 48-1 at 52). On average, Cole entered "[p]robably [at] the most . . . two or three" artifacts for other counselors. *Id.* at 133. Cole testified that parents' and students' negative comments about other counselors were not uploaded as artifacts. *Id.* at 146. The evidence shows that the receipt of any negative artifacts, let alone the abundance of negative artifacts Stringham received, was a phenomenon unique to her and attributable solely to Cole. A trier of fact could infer that Cole's actions, in context, were taken by a supervisor in anticipation of an eventual termination. Stringham herself thought so. At one point, after the September 2021 batch of twenty-four artifacts but before the following batch in January 2022, Stringham thought to ask Cole if the "tool was being used to accumulate data to fire [her]" (Filing No. 54-13 at 2).

An action is materially adverse if "the employee would be dissuaded from engaging in the protected activity." *Bragg v. Munster Med. Rsch. Found. Inc.*, 58 F.4th 265, 275 (7th Cir. 2023) (quoting *Roney v. Illinois Dep't of Transp.*, 474 F.3d 455, 461 (7th Cir. 2007)). Such a determination depends on "the circumstances of a particular case . . . judged from the perspective of a reasonable person in the plaintiff's position." *Id.* (quoting *Burlington N. & Santa Fe Railway Co. v. White*, 548 U.S. 53, 71, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)) (internal quotation and citation omitted). When presented after a lengthy medical leave with the extension of a second successive improvement plan and submission of thirty documented concerns of job performance — all initiated by Cole, a supervisor who previously had caused conditions resulting in the medical leave, *see* Filing No. 54-1 at 89 (the elevated blood pressure and suicidal thoughts prompting

medical leave were caused by "[t]he way [Cole] was treating [her]") — a reasonable teacher might be dissuaded from making or further supporting a discrimination charge.

The Court disagrees with Defendants argument that, in context, the actions presented are the stuff of "trivial harms, petty slights, []or minor annoyances", *Stephens v. Erickson*, 569 F.3d 779, 790 (7th Cir. 2009). The circumstances here "reasonably suggest that the [] events are somehow related to one another." *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000). Thus, there is a material questions of fact concerning the adverse actions taken in January 2022 and whether a causal connection existed. Accordingly, these retaliation claims should be left for the factfinder to resolve and summary judgment is **denied** on these retaliation claims.

### c.    The Termination

Stringham's retaliation claims, as they pertain to her termination, fail to meet the third necessary element. A causal nexus can be established by circumstantial evidence, which may include "suspicious timing, ambiguous statements of animus, evidence other employees were treated differently, or evidence the employer's proffered reason for the adverse action was pretextual." *Gnutek v. Illinois Gaming Bd.*, 80 F.4th 820, 824 (7th Cir. 2023) (quoting *Rozumalski v. W.F. Baird & Assoc., Ltd.*, 937 F.3d 919, 924 (7th Cir. 2019)). Addressing only the termination portion of the retaliation claims, Defendants argue the decision to initiate the contract cancellation process began over a year after the first internal complaint (and three weeks after the second internal complaint) and that the January 28, 2022 incident broke any casual connection.

Stringham's response relies heavily on her arguments presented for her discrimination claims, and she does not specifically address Defendants' contention that the "significant intervening event" of January 28, 2022, separated her protected activity from her discharge. *See Parker v. Brooks Life Sci., Inc.*, 39 F.4th 931, 937 (7th Cir. 2022) (quoting *Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 675 (7th Cir. 2011)). Even after resolving the differing

accounts of the January 28 incident in Stringham's favor, the Court finds that "any inference of causation supported by temporal proximity" is negated by "circumstances providing an alternative explanation for the challenged action." *Jokich v. Rush Univ. Med. Ctr.*, 42 F.4th 626, 634 (7th Cir. 2022), *cert. denied*, 143 S. Ct. 780, 215 L. Ed. 2d 49 (2023). Defendants initiated and ultimately terminated Stringham not only because of the unprofessional behavior surrounding the January 28 incident, but also because of her continued errors and job performance which fell below what was expected. It is the plaintiffs' responsibility to "identify such weaknesses, implausibilities, inconsistencies, or contradictions in the employer's asserted reasons that a reasonable person could find it unworthy of credence" to show this justification is pretextual. *Parker*, 39 F.4th at 937. As noted above in the discrimination context, Stringham ostensibly asserts as much in her attempts to unearth a discriminatory animus by Cole, but fails to offer any evidence that actually supports her position or contests Defendants' justifications for her termination. As such, Defendants are entitled to summary judgment on Stringham's termination retaliation claims.

In sum, the Court **grants in part** and **denies in part** summary judgment as to the retaliation claims discussed in Section III.B.3.b, *supra*.

## C.     Remaining Constitutional and Statutory Claims in Count I and Count II

### 1.     Substantive Due Process Claim

Stringham contends that her termination violated her Fourteenth Amendment right to substantive due process.

The parties agree that *Strasburger v. Bd. of Educ., Hardin Cnty. Cmty. Unit Sch. Dist. No. 1*, correctly governs Stringham's federal substantive due process claim. In *Strasburger*, the Seventh Circuit Court of Appeals indicated that, to make out a claim under § 1983 for an "arbitrary and capricious" termination,

a plaintiff must show that the conduct complained of was committed by a person acting under color of state law and this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. In the absence of elucidation from the Supreme Court, it has long been our precedent that a plaintiff who challenges the substance of a government decision on substantive due process grounds (as opposed to challenging the process the decision-makers used on procedural due process grounds) must show (1) that the decision was arbitrary and irrational, and (2) that the decision-makers either committed another substantive constitutional violation or that state remedies are inadequate.

143 F.3d 351, 357 (7th Cir. 1998) (internal quotations and citations omitted). Specifically, a plaintiff must allege that the government violated a fundamental right or liberty and that the violation was arbitrary and irrational. *Campos v. Cook Cnty.*, 932 F.3d 972, 975 (7th Cir. 2019) (internal citations omitted).

"[T]he scope of substantive due process is very limited." *Tun v. Whitticker*, 398 F.3d 899, 902 (7th Cir. 2005) (citing *Washington v. Glucksberg*, 521 U.S. 702 (1997)). And courts should be "reluctant to expand the concept of substantive due process because the guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). "Given its slippery nature, the requirements for stating a substantive due process claim are similarly vague." *Campos*, 932 F.3d at 975. "Substantive due process protects against only the most egregious and outrageous government action", *id.* (internal citations omitted), which precedent teaches must "shock[] the conscience". *See, e.g.*, *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1996) ("[T]the substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.") (internal quotation marks and citation omitted; collecting cases).

The first element of the claim is whether the government has violated a fundamental right. Stringham argues that she has a "property interest" in her continued employment with Carmel Clay

conferred by the "Indiana Teacher Tenure Act" (Ind. Code § 20-28-7.5-1 *et seq.*).  (Filing No. 53 at 22.)  The Seventh Circuit has held that employment rights are not fundamental, and thus "a public employee alleging wrongful termination cannot state a substantive due process claim 'unless the employee also alleges the defendants violated some other constitutional right or that state remedies were inadequate.'"  *Campos*, 932 F.3d at 975 (quoting *Palka v. Shelton*, 623 F.3d 447, 453 (7th Cir. 2010)).  Therefore, to state a claim, Stringham must allege that the Board deprived her of a state-created property interest by arbitrary and irrational conduct and that it either committed a separate constitutional violation or state law remedies are inadequate.  *Id.*

Stringham references Indiana statute to demonstrate that she possesses a property interest in continued employment.  Defendants do not deny she does, and this Court assumes the same.  The dispositive question is whether Stringham's allegations satisfy the remaining elements.  Defendants argue Stringham fails to allege "that any Board member committed a substantive constitutional violation" or "that the statutory termination proceeding she received was inadequate."  (Filing No. 55 at 20.)

The Court will first address Stringham's alleged separate constitutional violation.  In her Amended Complaint, she alleges a violation of the Equal Protection Clause of the Fourteenth Amendment because she was "treated differently than other non-homosexual Carmel employees".  (Filing No. 27 at 9.)  To make a *prima facie* case of an equal protection violation, Stringham must demonstrate that Defendants:

> (1) treated [her] differently from others who were similarly situated; (2) intentionally treated [her] differently because of [her] membership in the class to which [s]he belonged (i.e., [] homosexuals); and (3) because homosexuals [] do not enjoy heightened protection under the Constitution, that the discriminatory intent was not rationally related to a legitimate state interest.

*Davis v. Carmel Clay Sch.*, No. 1:11-CV-00771, 2013 WL 5487340, at *12 (S.D. Ind. Sept. 30, 2013) (citing *Schroeder  v. Hamilton Sch. Dist.*, 282 F.3d 946, 950–51 (7th Cir. 2002)), *aff'd in part*, 570 F. App'x 602 (7th Cir. 2014).  *See also Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1833 (2020) (Kavanaugh, J., dissent) ("All of the Court's cases from *Bowers*[ *v. Hardwick*, 478 U.S. 186 (1986),] to *Romer*[ *v. Evans*, 517 U.S. 620 (1996)] to *Lawrence*[ *v. Texas*, 539 U.S. 558 (2003)] to [*United States v. Windsor*, 580 U.S. 744 (2013)] to *Obergefell*[ *v. Hodges*, 576 U.S. 644 (2015)] would have been far easier to analyze and decide if sexual orientation discrimination were just a form of sex discrimination and therefore received the same heightened scrutiny as sex discrimination under the Equal Protection Clause.").

While Stringham discusses the first two prongs within the context of her statutory claims, she does not expressly respond to Defendants' arguments concerning her Equal Protection claim. Consequently, at a minimum, Stringham fails to allege that Carmel Clay's discriminatory intent was not rationally related to any legitimate state interest.  Nor does she present any arguments or case law regarding this claim in her response.  Accordingly, she has waived or abandoned this claim. As this Order finds below, Stringham fails to sufficiently allege an Equal Protection violation – the only separate (federal) constitutional violation set forth in her Amended Complaint.

Without a separate constitutional violation, Stringham must demonstrate that there are inadequate state law remedies.  She fails to do so.  While she argues vociferously that the decision reached was arbitrary and capricious, she does not otherwise show or argue why Indiana's Teacher Tenure Act, Ind. Code § 20-28 *et seq*., or other state statutory or regulatory schemas would not provide adequate remedy.

For those reasons, her substantive due process claim fails as a matter of law. The Board's motion for summary judgment on Stringham's claim for violation of her Fourteenth Amendment substantive due process rights is **granted**.

### 2. Petition for Judicial Review Pursuant to Ind. Code § 4-21.5-5-14

Stringham petitions this Court for judicial review of the Board's decision to terminate her teaching contract. When it terminated Stringham, the Board acted as an administrative agency. *Scott Cnty. Sch. Dist. 2 v. Dietrich*, 496 N.E.2d 91 (Ind. Ct. App. 1986). Under the relevant statute, Indiana's Administrative Orders and Procedures Act ("AOPA"), the court grants relief only if it determines that a party has been prejudiced by an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence." Ind. Code § 4-21.5-5-14(d)(1) and (5). Under the AOPA, the scope of a court's judicial review is limited to a consideration of: (1) whether there is substantial evidence to support the agency's finding and order, and (2) whether the action constitutes an abuse of discretion or is arbitrary or capricious. *Breitweiser v. Indiana Off. of Env't Adjudication*, 810 N.E.2d 699, 702 (Ind. 2004) (citing *Rynerson v. City of Franklin*, 669 N.E.2d 964, 971 (Ind. 1996)). "[S]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support the decision". *St. Charles Tower, Inc. v. Bd. of Zoning Appeals of Evansville-Vanderburgh Cnty.*, 873 N.E.2d 598, 601 (Ind. 2007).

A court may only vacate a school board's decision under the substantial evidence standard "if the evidence, when viewed as a whole, demonstrates that the conclusions reached by the school board are clearly erroneous." *Fears v. Pike Cnty. Sch. Corp.*, No. 3:13-cv-00189, 2014 WL 3740778, at *2 (S.D. Ind. July 30, 2014) (quoting *Stewart v. Fort Wayne Cmty. Sch.*, 564 N.E.2d 274, 278 (Ind. 1990)). This Court "may not weigh the evidence nor adjudge the credibility of the witnesses, even if [the court] may have drawn a different conclusion." *Id.* (quoting *Fiscus v. Bd.*

*of Tr. of Cent. Sch. Dist. of Greene Cnty.*, 509 N.E.2d 1137, 1141 (Ind. Ct. App. 1987)).  Acting in an adjudicative capacity, school boards can base their decisions on hearsay evidence.  *See* Ind. Code § 4-21.5-3-26 (Conduct of Hearing; Evidence); Ind. Code § 4-21.5-1-9 (defining "Order" to include agency action that determines legal interests); Ind. Code § 4-21.5-1-2 (defining "Administrative Law Judge" to include a board or commission presiding over a preceding).

Under Indiana's Teacher Tenure Act, school boards can cancel teacher contracts only for a finite number of reasons, including immorality, insubordination, incompetence, neglect of duty, a justifiable decrease in the number of teaching positions, a conviction, or other good or just cause. Ind. Code § 20-28-7.5-1 (2015).  School boards require only a single reason.  *See id*.

In Stringham's case, the Board unanimously determined three separate bases to cancel her contract — neglect of duty, insubordination, and other good and just cause — and made findings as to incompetence without any express conclusion as to that factor (Filing No. 1-1 at 14–16, 20). After a careful review of the detailed "Findings of Fact" and related "Conclusions of Law", this Court cannot find that the evidence relied on was insufficient to support the Board's ruling on Stringham's termination.

The Board supported its neglect of duty determination across several findings.  Namely, it found that Stringham had been warned of the concern about her continued performance issues in her 2019–2020 end of year evaluation, her First and Second Improvement plans, the four meetings in Fall 2021, and the extension period of the Second Improvement Plan — which it also found to apply to its incompetence and other good or just cause determinations (Filing No. 1-1 at 14).  The Board further found among other things that Stringham's evaluation rating also dropped; her continued shortcomings were not meeting expectations; she provided incorrect information to

students and families on multiple occasions; and she failed to identify the three at-risk students in the spring semester of the 2020–2021 school year.

While Stringham may disagree with the Board's assessment that her job performance fell below what was expected of other counselors, the Board's rationale was consistent with the evidence before it regarding her duty and performance as a counselor. Borto testified that "[r]arely any" students per counselor would fail to graduate, "[m]aybe" one per counselor (Filing No. 54-1 at 35). The Board found three students of Stringham's did not graduate that year. Although Stringham asserts in her declaration that two of three at-risk students transferred in from other schools without enough credits to graduate in the 2020–2021 year, this fact does not negate that she never mentioned to Borto the remaining student (who would not go on to graduate). Nor does it negate the Board's findings that she did not identify the students in the March meeting, who could have then been triaged. Thus, Defendants did not act arbitrarily and capriciously in its conclusion that Stringham neglected her duties.

Furthermore, the Board's decision to terminate Stringham was not based solely on its neglect of duty findings; it was also based in part on determinations of insubordination and other good or just cause. The Board found Stringham explicitly disregarded Oestreich's directive to contact him about the mental health license application and she instead approached Cole to discuss it on January 28, 2022. The Board also found continued performance issues evidenced by the artifact uploads and, as previously discussed, the several warnings spanning from 2019 through 2021 and her dropping evaluation rating. This Court may not reweigh this evidence against that which Stringham would have it consider. *Fears*, 2014 WL 3740778, at *6.

Accordingly, coupled with Stringham's neglect of duty, this constitutes sufficient evidence for Defendants to terminate her contract. This Court cannot say that the evidence, when viewed

as a whole, demonstrates that the conclusions reached by the Board are clearly erroneous.  *See id.* at *6.  The Court grants Defendants' motion for summary judgment on Stringham's claim for judicial review alleged in Count II.

### 3.  Equal Protection Claim under 42 U.S.C. § 1983

Stringham presents no argument in her response brief in support of her equal protection claim that Defendants, in the context of her termination, "treated [her] differently than other non-homosexual Carmel employees".  (Filing No. 27 at 9.)  "The equal protection clause of the Fourteenth Amendment protects individuals against intentional, arbitrary discrimination by government officials."  *Hayden v. Greensburg Cmty. Sch. Corp.*, 743 F.3d 569, 577 (7th Cir. 2014).

> The gravamen of equal protection lies not in the fact of deprivation of a right but in the invidious classification of persons aggrieved by the state's action.  A plaintiff must demonstrate intentional or purposeful discrimination to show an equal protection violation.  Discriminatory purpose, however, implies more than intent as volition or intent as awareness of consequences.  It implies that a decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group.

*Nabozny v. Podlesny*, 92 F.3d 446, 453–54 (7th Cir. 1996) (quoting *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982)).  A showing that Defendants were negligent will not suffice — Stringham must show that they acted either intentionally or with deliberate indifference.  *Id.*

For the reasons explained in the discussions of Stringham's Title VII discrimination and AOPA claims, Stringham cannot prove this element of a *prima facie* case of discrimination under the equal protection clause.  Importantly, for purposes of the Court's substantive Due Process analysis above, Stringham does not delineate her Equal Protection Clause claim in her brief in opposition to summary judgment, and thus the claim is deemed abandoned.  *See Palmer*, 327 F.3d at 597–98.  Accordingly, summary judgment is **granted** on Stringham's Equal Protection claim.

4.      **Claims Based on the Indiana Constitution**

In Count I of her Amended Complaint, Stringham alleges that the arbitrary and capricious decision to terminate her teaching contract violates Article I, Section 12 of the Indiana Constitution and that the treatment of her, which she contends was different from other non-homosexual employees, violates Article I, Section 23 of the Indiana Constitution. She seeks damages.

Indiana's courts have not recognized a civil damages remedy for alleged violations of Sections 12 and 23 of the Indiana Constitution. *Greater Indianapolis Chapter of N.A.A.C.P. v. Ballard*, 741 F. Supp. 2d 925, 934 (S.D. Ind. Sept. 16, 2010). Section 12, known as the "open courts" provision, provides in relevant part: "All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law." Ind. Const. art. I, § 12. The provision prohibits state action that deprives a person of a protectable interest without a fair proceeding and prescribes procedural fairness. *McIntosh v. Melroe Co., a Div. of Clark Equip. Co.*, 729 N.E.2d 972, 975 (Ind. 2000). Section 23, the privileges and immunities provision, states: "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens." Ind. Const. art. I, § 23.

The Indiana Supreme Court in *Cantrell v. Morris*, 849 N.E.2d 488 (Ind. 2006), articulated that at least where a state tort law remedy is generally available to redress a purported constitutional wrong, "it is unnecessary to find a state constitutional tort." *Id.* at 506; *accord Smith v. Ind. Dep't. of Corr.*, 871 N.E.2d 975, 985 (Ind. Ct. App. 2007) ("[N]o Indiana court has explicitly recognized a private right of action for monetary damages under the Indiana Constitution."). The judges of this district have consistently refused to recognize an implied right of action under the Indiana Constitution. *Greater Indianapolis Chapters of N.A.A.C.P.*, 741 F.Supp.2d at 934 (collecting

41

cases).  Accordingly, the Court **grants** Defendants' motion for summary judgment on Stringham's

claims for damages under the Indiana Constitution alleged in Count I of her Amended Complaint.

## IV.  <u>CONCLUSION</u>

For the reasons discussed above, Stringham's Motion for Leave to File Surreply and

Supplemental Designation of Evidence (<u>Filing No. 75</u>) is **DENIED** and Defendants' Motion for

Summary Judgment (<u>Filing No. 54</u>) is **GRANTED in part and DENIED in part**.  Summary

judgment is **granted** on Counts I, II, III, V, and VII, and these claims are terminated.  Summary

judgment is also **granted** on Counts IV, VI, and VIII, except for the retaliation claims as discussed

in Section III.B.3.b, *supra*.  With respect to these claims, summary judgment is **denied**, and the

claims in Count IV (Race Retaliation), Count VI (National Origin Retaliation) and Count VIII

(Sex Retaliation) relating to extension of the Second Improvement Plan and receipt of the

additional thirty artifacts in January 2022, may proceed to settlement or trial**.**

**SO ORDERED.**

Date:  1/4/2024

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Jamie A. Maddox
BETZ & ASSOCIATES
jmaddox@betzadvocates.com

Sandra L. Blevins
BETZ & ASSOCIATES
sblevins@betzadvocates.com

Brent R. Borg
CHURCH HITTLE & ANTRIM (Fishers)
bborg@cchalaw.com

Hannah Gahimer
CHURCH HITTLE & ANTRIM
hgahimer@cchalaw.com

Cassie Nichole Heeke
CHURCH, CHURCH, HITTLE AND ANTRIM
cheeke@cchalaw.com